EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ANDRÉS MÁRQUEZ ESTRADA, acusado y apelante.

*Número:* CR-66-10        *Resuelto:* 15 de diciembre de 1966

*Raúl A. Feliciano,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Lolita Miranda de Escudero, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El apelante conducía un vehículo de motor por una de las avenidas de esta Capital. No detuvo la marcha al llegar a una intersección en la que el semáforo indicaba que se detuviera. Tuvo una colisión con otro vehículo. "Trató de seguir hacia adelante, pero la goma de adentro estaba explotada y estaba encajada en la verja, entonces abrió la puerta y se fue por debajo de la verja." Un policía de la patrulla observó lo ocurrido, se desmontó de su vehículo y lo persiguió. Al alcanzarlo le pidió la licencia y el apelante le mostró un *"ticket"* vencido. Adoptó una actitud agresiva. Lo registró y en un bolsillo le encontró una chapa ahumada, un cuentagotas y una aguja

hipodérmica. El agente llevó al apelante al cuartel y allí le entregó a un químico los objetos ocupados. El químico declaró que "en la parte anterior de la tapita de metal había un residuo . . . unos cristalitos que se supone que eran de drogas . . . los cristales estaban pegados al fondo de la tapita. Yo los raspé." Explica que lo que encontró luego de raspar con una pequeña espátula es "una cantidad mínima", cincuenta microgramos que caben en la cabeza de un alfiler. Declaró, además, que al cuentagotas se le hizo un lavado con agua destilada y no presentó traza de droga alguna y tampoco encontró traza de droga en la aguja hipodérmica.

El acusado no presentó prueba. Convicto, apeló.

El juez al instruir al jurado manifestó:

"Se prohibe, pues, en Puerto Rico que una persona tenga en su posesión la droga narcótica conocida como heroína no importa la cantidad de esta droga que posea; no importa la forma en que se encuentre esta droga."

El apelante impugna esta interpretación. Sostiene que "la posesión ilegal de narcóticos que castiga la ley debe ser una cantidad suficiente que pueda ser susceptible de ser aplicada al uso común que se hace de la misma."

Así, la cuestión a resolver en el presente recurso es si la posesión de una cantidad tan mínima de narcótico evidentemente imperceptible a simple vista, constituye una violación de nuestro estatuto.

Dispone el Art. 29 de la Ley de Narcóticos, 24 L.P.R.A. sec. 974z, que "queda absolutamente prohibida la tenencia, posesión, traspaso, uso, aplicación, prescripción, manufactura, preparación, a cualquier transferencia o recibo, así como la introducción, la ocultación y la transportación en Puerto Rico de . . . la droga narcótica conocida como heroína, así como cualquier preparación o producto elaborado de la misma sin importar su forma y naturaleza que contenga *cualquier cantidad de esa droga . . . .*" (Énfasis suplido.)

Al considerar la cuestión planteada, los tribunales donde rigen leyes similares a la nuestra, han adoptado posiciones encontradas. Unos sostienen que cualquier cantidad de la droga que se posea infringe la ley. *Casias* v. *People*, 415 P.2d 344 (Colo. 1966); *Peachie* v. *State*, 100 A.2d 1 (Md. 1953); *State* v. *Dodd*, 137 N.W.2d 465 (Wis. 1965). Otros concluyen que para estar incurso en la violación del estatuto la cantidada de droga narcótica ocupada es un factor determinante.(1) *People* v. *Leal*, 413 P.2d 665 (Calif. 1966); *People* v. *McCarthy*, 413 P.2d 671 (Calif. 1966); *State* v. *Moreno*, 374 P.2d 872 (Ariz. 1962); *Green* v. *State*, 292 S.W.2d 122 (Texas 1956); *Pelham* v. *State*, 298 S.W.2d 171 (Texas 1957).

La posición asumida por los primeros es sencilla y no requiere consideración ulterior. Como la ley establece que constituye delito poseer "cualquier cantidad de droga", no hay para qué ir más allá de los términos claros y específicos del estatuto. Cualquier cantidad incluye la más mínima cantidad.

Procede pues considerar los dictámenes que han sostenido que la cantidad de droga ocupada es un factor a considerar. En primer lugar, la Corte de Apelaciones Criminales del Estado de Texas en los casos de *Green* y *Pelham*, adoptó la posición de que a menos que la cantidad de droga ocupada sea susceptible de usarse para los fines que normalmente se usa, no constituye la posesión que castiga la ley.

---

(1) En el Estado de Nueva York han obviado la cuestión al establecerse por ley lo siguiente:

"Any person who shall possess or have under his control, in violation of any section of article thirty-three of the public health law . . . (2) one-eighth ounce or more, containing one per centum or more of the respective alkaloids or salts of heroin, morphine, or cocaine . . . shall be punishable by imprisonment for an indeterminate term the minimum of which shall be not less than three years and the maximum of which shall be not more than ten years. In determining said weight, avoirdupois ounces shall be used for solids or semi-solids and fluid ounces for liquids."

La de Arizona, en el caso de *Moreno*, expresó;

"Creemos que la regla correcta que debe aplicarse bajo un estatuto como el nuestro es que si la cantidad de narcótico es tan pequeña que se requiere un análisis químico para determinar su presencia, la cantidad sería suficiente si se pudiera utilizar bajo las prácticas conocidas de los narcómanos. Sostenemos que sólo en los casos donde la cantidad no puede servir para ningún uso efectivo será la evidencia insuficiente para sostener una convicción."

La Corte Suprema de California, a pesar de que desde el año 1936 las cortes intermedias de apelación adoptaron posiciones contradictorias sobre esta cuestión, no fue hasta el presente año que fijó su posición en el caso de *Leal* resuelto el 2 de mayo de 1966. Al resolverla consideró los dictámenes más importantes emitidos desde *People* v. *Salas*, 61 P.2d 771 (1936) en el que una Corte de Apelaciones intermedia sostuvo que como la ley prohibe la posesión de cualquier cantidad, la cantidad ocupada no juega papel alguno en la comisión del delito, hasta *People* v. *Aguilar*, 35 Cal. Rptr. 516 (1963); *People* v. *Meléndez*, 37 Cal. Rptr. 126 (1964) y *People* v. *Sullivan*, 44 Cal. Rptr. 524 (1965) resueltos por otras cortes intermedias que adoptan una posición distinta.

Luego de analizar las opiniones más importantes en uno y otro sentido de estas cortes intermedias, el Tribunal Supremo de California expuso:

"Concluimos que las diferencias entre los varios delitos según definidos en los estatutos, así como la historia de los casos que culminan en la decisión en *Sullivan* demuestran que el castigar a una persona que posee un narcótico la Legislatura proscribió la posesión de una sustancia que tiene un potencial de narcóticos; prohibió la materia que puede ser utilizada como tal. No se refirió a trazas inservibles o residuos de tales sustancias. Así que la posesión de un ínfimo residuo cristalino de un narcótico, inadecuado para la venta o el uso, como establece el caso de *Sullivan,* no constituye evidencia suficiente para sostener una convicción."

Nos parece que la posición asumida por las Cortes Supremas de California, Arizona y Texas es la más razonable. Si tomamos en consideración el hecho de que la posesión y el uso de drogas (expresamente hemos excluido la venta) necesariamente no constituye un acto criminal y la circunstancia de la pena tan severa establecida, es razonable exigir que para estar incurso en el delito de posesión la cantidad ocupada debe ser de tal naturaleza que pueda usarse como narcótico.

Como apuntamos anteriormente, hemos excluido la venta de la aplicación de esta norma porque si se establece una transacción de esta clase, hay que presumir que la cantidad es susceptible de usarse. Como se expresó en el caso de *Ballesteros*:

"Como cuestión de derecho la intención requerida para establecer el delito de posesión no está presente cuando la cantidad es tan ínfima que es inadecuada para cualquier uso aún cuando puede ser identificada como narcótico mediante un análisis químico. Pero cuando la modalidad del delito imputado es la venta de una droga narcótica, la intención requerida se establece mediante la transferencia de cualquier cantidad cuando las circunstancias envueltas indican una intención de vender."

No creemos que el hecho de que nuestra legislación no penalice la posesión de los instrumentos que se usan para inyectarse drogas sea un factor en contra de la adopción de la regla. Por el contrario creemos que luego de conocido el presente dictamen la Asamblea Legislativa determinará en el momento apropiado si es conveniente establecer ese delito.

Establecido lo anterior, revisemos los hechos que dieron margen a la acusación radicada contra el apelante. Le fue ocupada una aguja hipodérmica, un cuentagotas y una chapa ahumada. Fue registrado luego de darse a la fuga tras haber ocasionado una colisión con el vehículo que conducía. Había sido denunciado anteriormente por otra infracción a las leyes de tránsito y no había acudido al tribunal el día que había sido citado. El *"ticket"* que le mostró al policía

estaba vencido. Declaró el químico que en la chapa había un residuo, unos cristalitos que se supone que eran de drogas, una cantidad mínima que cabía en la cabeza de un alfiler. En el cuentagotas y la aguja hipodérmica no encontró trazas de droga alguna. Si bien la posesión de los artículos que le fueron ocupados—la aguja hipodérmica y el cuentagotas—suelen usarse para inyectarse los estupefacientes, en el presente caso no hay prueba de que hubieran sido usados para ese fin. Así lo único que puede conectar al acusado con el delito que se le imputó, son los cristalitos que aparecieron en la chapa en cantidad mínima (cabían en la cabeza de un alfiler) y que evidentemente no podían ser usados como estupefacientes. Lo más que esta prueba podía establecer era que el tenedor había poseído narcóticos en alguna ocasión anterior. *Es claro, pues, que la regla que hemos adoptado es de aplicación a estos hechos y que procede la revocación de la sentencia.*