EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ALBERTO CRUZ ROSADO, acusado y apelante.

*Número:* CR-68-43    *Resuelto:* 27 de junio de 1969

*E. Armstrong de Watlington, Enrique Miranda Merced* y *Julio García Antique*, abogados del apelante; *J. F. Rodríguez Rivera*, Procurador General Interino, y *Federico Rodríguez Gelpí*, Procurador General Auxiliar, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Los hechos ocurrieron en un sitio conocido por Tres Peñas en la Barriada La Perla. Como a diez pies de donde estaba el apelante, en un solar vacío y arenoso, lo observó un agente en compañía de Rafael Claudio Hernández mientras ambos en cuclillas estaban trasteando, tratando de coger algo de una cajita negra que se encontraba entre los dos. El agente se acercó y como a un pie de distancia notó que fuera de la cajita y sobre la arena entre los dos, había una envoltura

azul de las que se usan para envasar heroína. El agente ocupó la envoltura y la cajita. Dentro de la cajita había una aguja hipodérmica, un gotero y una chapita ahumada. La aguja estaba adherida al gotero. En la envoltura encontró un polvo. Registró a los dos individuos y nada encontró sobre ellos que se relacionara con narcóticos. A preguntas de la defensa declaró que en los brazos tenían marcas "no muy recientes" de las que aparecen en los brazos de los que se inyectan. El polvo fue analizado y resultó ser heroína.

Alberto Cruz Rosado fue convicto de posesión. Como la heroína no fue ocupada sobre su persona sostiene que la prueba no estableció el delito.

En *Pueblo* v. *Pellot Pérez*, 92 D.P.R. 812 (1965) expresamos:

"La posición del apelante es que él no estuvo en la posesión de la droga porque 'para que se entienda que se está en la posesión de algo, uno debe ser capaz de tener el poder de ejecutar algún acto de dominio sobre esto.'

[1–2] Aparentemente el apelante cree que la posesión que castiga la Ley de Narcóticos es lo que el Código Civil llama 'posesión civil' y que consiste en la tenencia de una cosa por una persona, unida a la intención de haberla como suya. Código Civil, Art. 360; 31 L.P.R.A. sec. 1421. No es ese el caso. La Ley de Narcóticos prohibe la mera posesión o tenencia de las drogas prohibidas, o sea, lo que el Código llama la 'posesión natural.' Esto es así porque el propósito de la Ley de Narcóticos no es reglamentar la propiedad y las diversas maneras de poseer una cosa. El propósito de la Ley de Narcóticos es proteger la salud, la moral y la seguridad públicas y su promulgación obedece al deber del Estado de proteger esos valores y de promover el bienestar general. *Jenkins* v. *State*, 137 A.2d 115 (1957). Para lograr esos fines la ley prohibe la posesión y venta de narcóticos, salvo las excepciones que por ley se hagan. *State* v. *Lee*, 382 P.2d 491 (1963).

[3–5] Nuestro Art. 29 no distingue y bajo él la posesión interina o temporera de la droga prohibida con el propósito de un traspaso ilegal constituye posesión ilegal. En el contexto de la ley, y atendiendo a su propósito las palabras posesión, trans-

portación y control de la droga prohibida deben entenderse en su significado usual. *State* v. *Richard*, 158 So.2d 828 (1963). No es correcta la posición del apelante de atribuirle a la palabra posesión utilizada en la Ley de Narcóticos el concepto técnico de posesión civil antes mencionado."

■ En el presente caso, si bien es verdad que el apelante no tenía la posesión física de la droga—estaba sobre la arena entre el acusado y la otra persona que le acompañaba—ambos tenían el control de la misma. No es necesario la tenencia física para estar incurso en el delito castigado por el Art. 29 de la Ley de Narcóticos. Como se expresó por la corte Suprema de California en *People* v. *Showers*, 440 P.2d 939 (1968):

"La posesión ilegal de narcóticos se establece con prueba (1) de que el acusado ejercía dominio y control sobre el contrabando, (2) que él conocía de su presencia, y (3) que el acusado tenía conocimiento de que el material era un narcótico. (*People* v. *Groom*, 60 C.2d 694, 696, 36 Cal. Rptr. 327, 388 P.2d 359, 361.)

.    .    .    .    .    .    .    .

La posesión puede ser inmediata o constructiva. (E.g., *People* v. *White*, 50 C.2d 428, 431, 325 P.2d 985; *People* v. *Prescott*, 257 A.C.A. 960, 962, 65 Cal. Rptr. 366; *People* v. *Hokuf*, 245 Cal. App. 2d 394, 397, 53 Cal Rptr. 828.) El acusado tiene la posesión constructiva cuando mantiene el control o el derecho al control del contrabando. La posesión puede ser imputada cuando el contrabando es hallado en un sitio inmediato y exclusivamente accesible al acusado y sujeto a su dominio y control. (E.g., *People* v. *Finn*, 232 (Cal. App. 2d 422, 426, 42 Cal. Rptr. 704 (en el baño del acusado) *People* v. *Van Valkenburg*, 111 Cal. App. 2d 337, 340, 244 P.2d 750 (en la cama del acusado). *People* v. *Noland*, 61 Cal. App. 2d 364, 366, 143 P.2d 86 (en un jarrón del cuarto del acusado).) Aun cuando el acusado no tenga control exclusivo del escondite puede imputársele la posesión si él no ha abandonado el narcótico y ninguna otra persona ha obtenido la posesión. (*People* v. *Cuellar*, 110 Cal. App. 2d 273, 242 P.2d 694 (el acusado enterró el narcótico en un parque público cubriendo el escondite con hojas); *People* v. *Bigelow*, 104 Cal. App. 2d 380, 385, 231 P.2d 881.) Se considera además que el

acusado tiene la misma posesión que cualquier persona con posesión inmediata del narcótico conforme a su instrucción o permiso cuando él retiene el derecho de ejercer el dominio y control sobre la propiedad. (E.g., *People* v. *White,* supra, 50 C.2d 428, 431, 325 P.2d 985; *People* v. *Blunt,* 241 Cal. App. 2d 200, 204, 50 Cal. Rptr. 440; *People* v. *Graves,* 84 Cal. App. 2d 531, 534–535, 191 P.2d 32.)

Cuando la doctrina es de aplicación, se considera que el acusado tiene la posesión constructiva actual de la propiedad aun cuando él no tenga la posesión inmediata . . . ."

■ Hemos visto que no es necesario tener la posesión física de la droga. Basta que tenga el control. Evidentemente las dos personas sorprendidas por el agente estaban preparando la dosis de heroína que iban a usar. Apareció la parafernalia necesaria para inyectarse. La aguja hipodérmica ya adherida al gotero y la chapita. El *deck* de heroína estaba en el suelo entre las dos personas sorprendidas. Las dos tenían cicatrices en sus brazos indicativas de que usan la droga. El hecho de que la droga estuviera sobre la arena, entre los dos no los exime de responsabilidad. Tenían el control de la misma. Véanse además: *State* v. *Hunt,* 370 P.2d 642 (Ariz. 1962); *Carrol* v. *State,* 368 P.2d 649 (Ariz. 1962); *Rideout* v. *Superior Court of Santa Clara County,* 432 P.2d 197 (1967); *People* v. *Groom,* 388 P.2d 359 (Cal. 1964); *People* v. *Patton,* 70 Cal. Rptr. 484 (Cal. 1968); *Petty* v. *People,* 447 P.2d 217 (Colo. 1968); *People* v. *Mack,* 145 N.E.2d 609 (Ill. 1957).

*No habiéndose cometido el error apuntado procede la confirmación de la sentencia.*

El Juez Asociado Señor Santana Becerra concurre en el resultado.