EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MIGUEL CRUZ RIVERA, acusado y apelante.

*Número:* CR-70-151 *Resuelto:* 28 de diciembre de 1971

*Ismael Cuevas Velázquez,* abogado del acusado; *Gilberto Gierbolini, Procurador General,* y *Bienvenido Vélez Coello, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El apelante fue acusado y convicto por infracción a la Ley de Narcóticos de Puerto Rico. Se le imputó que el día 22 de febrero de 1969 tenía en su posesión y domi-

nio, ocultó y transportó la droga narcótica conocida como heroína.

La prueba de cargo demostró que el policía Manuel Izquierdo se encontraba junto con otro agente en una patrulla especial al recibir una llamada por radio en la que informaron haberse recibido una confidencia de "que había un carro Chevrolet del '60 en la Calle Dorado en Puerto Nuevo, frente a la placita, con tres individuos dentro los cuales estaban inyectándose." Se dirigieron al referido lugar en donde encontraron un automóvil que correspondía con la descripción héchales con tres personas adentro. El acusado apelante se encontraba sentado en el sitio del conductor, Iluminado Flores estaba a su derecha en el asiento delantero y Luis Martínez en el asiento trasero. El vehículo de la policía paró detrás del vehículo del acusado. Al notar la presencia de los policías Iluminado lanzó hacia afuera un vaso plástico que contenía cierto líquido e intentó romper un gotero que tenía una aguja adherida y una cabeza de goma detrás. El policía Izquierdo se acercó por el lado derecho y su compañero por el izquierdo observando al llegar a la ventana que en el asiento delantero entre el acusado e Iluminado había un sobre pequeño de manila y otra bolsa de papel doblada sobre el asiento. Procedieron a ocupar ese material y a detener a los ocupantes del vehículo. Dentro del sobre se encontraron treinta y cinco envolturas que fueron llevadas al químico de la policía quien determinó e informó que el contenido de los sobres dio positivo de heroína. Como consecuencia se sometió el caso ante un magistrado.

Se señala como primer error que incidió el tribunal al admitir la evidencia ocupada habiendo sido resultado de un registro ilegal.

No le asiste la razón. El registro fue razonable, incidental y contemporáneo con un arresto legal. El derecho al registro contemporáneo y a la ocupación de evidencia no solamente se extiende a la persona que está siendo legalmente

arrestada, sino también a los lugares (*premises*) y cosas que están bajo su control inmediato. *Pueblo* v. *Riscard*, 95 D.P.R. 405 (1967) y casos allí citados.

El registro fue razonable al llevarse a efecto por el policía Izquierdo en el momento del arresto, al notar entre el acusado y su acompañante sobre el asiento delantero del automóvil donde ambos estaban sentados, un sobre y una bolsa, dentro de cuyo sobre había unas envolturas con polvo de heroína.

■ El arresto efectuado es legal de acuerdo con las disposiciones de la Regla 11 de Procedimiento Criminal. La conducta sospechosa del grupo consistente en el lanzamiento de un vaso plástico por uno de los ocupantes, que contenía un líquido y su intento de romper un gotero al que se encontraba adherido una aguja hipodérmica, unido a la confidencia recibida por la policía, era suficiente para crear en la mente de una persona razonable la convicción de que se está cometiendo un delito en su presencia. Véanse, *Pueblo* v. *Flores Valentín*, 88 D.P.R. 913 (1963); *Pueblo* v. *Erausquín Martínez*, 96 D.P.R. 1 (1968).

■ En lo referente a la confidencia, la confiabilidad de la misma fue fortalecida por las observaciones de los policías respecto a la exactitud de la descripción dada por el informante del automóvil y del lugar en que se encontraba así como de los actos que se cometían. El que la información producida por la confidencia constituya prueba de referencia no destruye su validez para determinar motivos fundados para arrestar. Ya hemos adoptado en esta jurisdicción el principio de que la información recibida de un informante confiable, corroborada por las observaciones de un agente respecto a la exactitud de la descripción de un acusado ofrecida por el informante y de la presencia de aquél en un sitio específico es suficiente para establecer motivos fundados para un arresto sin mandamiento. *Pueblo* v. *Flores Valentín*, supra; *Ker* v. *California*, 374 U.S. 23 (1963); *Draper* v. *United States*, 358 U.S. 307 (1959).

Se señala como parte del primer error que el tribunal incidió al admitir en evidencia el material ocupado al tomar conocimiento judicial del expediente de un juicio anterior contra un co-acusado por los mismos hechos y en el cual se había admitido la misma evidencia. No tenemos base para creer que el juez haya tomado conocimiento judicial de dicho expediente. El tribunal admitió en evidencia el material ocupado a través de la prueba desfilada en el juicio.

En el segundo y tercer error cuestionan la suficiencia de prueba aportada por el fiscal. Esencialmente se cuestiona el que el acusado estuviese en posesión de la droga.

La prueba ofrecida, creída como fue por el tribunal de instancia, es suficiente para sostener la convicción. La heroína se encontraba en el asiento del automóvil del acusado entre éste y su acompañante en un sitio visible. Si bien es cierto que no hay prueba para demostrar que el acusado tuviese la posesión física de la droga, él y su acompañante tenían el control de la misma.

 No es necesario tener la tenencia física para estar incurso en los delitos castigados por la Ley de Narcóticos. La posesión puede ser inmediata o constructiva. El acusado tiene la posesión constructiva cuando mantiene el control o el derecho al control del contrabando. *Pueblo* v. *Cruz Rosado*, 97 D.P.R. 513 (1969). Como expresamos en el caso de *Cruz Rosado*, citando el de *People* v. *Showers*, 440 P.2d 939 (1968) :

"La posesión ilegal de narcóticos se establece con prueba (1) de que el acusado ejercía dominio y control sobre el contrabando, (2) que él conocía de su presencia, y (3) que el acusado tenía conocimiento de que el material era un narcótico. (*People* v. *Groom*, 60 C.2d 694, 696, 36 Cal. Reptr. 327, 388 P.2d 359, 361)."

El caso de *Pueblo* v. *Maysonet Laureano*, 90 D.P.R. 497 (1964), es claramente distinguible del de autos. Allí la droga fue encontrada en la gaveta del frente de un automóvil perteneciente a una persona distinta al acusado, mientras el acusado se encontraba en el asiento trasero de dicho automó-

vil. La única prueba que relacionaba al acusado en ese caso fue el lanzamiento a la calle de una portada de revista en el momento de notar la presencia de los policías. La prueba química a que fue sometida la portada dio negativo de droga alguna.

En el caso de autos, por el contrario, la heroína se encontraba en el asiento del automóvil del acusado, junto a éste y en un lugar visible y accesible al acusado. En adición a ello se lanzó de dicho automóvil un gotero adherido a una aguja hipodérmica. El cuadro general de hechos y las circunstancias presentes en este caso claramente demuestran que la heroína se encontraba bajo el control del acusado y que él conocía de la presencia de la misma.

Como parte del segundo error se señala que el químico utilizado por el fiscal no indicó si la evidencia ocupada y analizada podía ser utilizada como estupefaciente. El químico declaró que se encontraron 114 gramos de polvo conteniendo un 26% de heroína. Ello es suficiente para concluir que existía cantidad suficiente para ser susceptible de ser usada como estupefaciente. Por tal motivo nuestra decisión en el caso de *Pueblo* v. *Márquez Estrada,* 93 D.P.R. 811 (1966) no es de aplicación. (1) Véase además, *Pueblo* v. *Encarnación Encarnación,* 95 D.P.R. 933 (1968).

*Se confirmará la sentencia apelada.*

El Juez Presidente, Señor Negrón Fernández, no intervino.

---

(1) En el caso de *Pueblo* v. *Márquez Estrada,* supra, pág. 813, nota 1, señalamos que en el estado de Nueva York se ha obviado la cuestión al establecerse por ley una cantidad mínima de narcótico que se debe poseer para estar incurso en el delito de posesión de narcóticos. Citamos entonces una disposición de la ley penal del estado de Nueva York que disponía que cualquier persona que tuviese bajo su control una preparación de un octavo de onza o más, conteniendo un por ciento o más de heroína, morfina o cocaína cometía el delito estatuido.

La citada disposición que formaba parte del Código Penal de Nueva York ha sido enmendada. En la actualidad dicho código divide el delito de posesión de narcóticos en cuatro grados de acuerdo a la cantidad y

tipo de droga poseída. Igualmente se ha eliminado el requisito de 1% de heroína del total del compuesto ocupado que requería el antiguo articulado. Véase, *McKinney's Consolidated Laws of New York Annotated,* Libro 39, sec. 220 *et seq.*

En la actualidad la sección 220.15 de la citada ley establece en lo pertinente que el delito de posesión de narcóticos en segundo grado es cometido cuando se posee un octavo de onza o más de cualquier preparación o mezcla que contenga heroína, morfina o cocaína, independientemente del por ciento de dichos narcóticos encontrados en la preparación o mezcla ocupada. Véase, *McKinney's* supra, sec. 220.15.

De igual forma la sección 220.20 establece que se comete el delito de posesión de narcóticos en primer grado cuando se posee una onza o más de cualquier preparación o mezcla que contenga heroína, morfina o cocaína, independientemente también del por ciento de droga encontrada en la preparación ocupada. Véase, *McKinney's,* supra, sec. 220.20.

Como puede apreciarse la cantidad ocupada en el caso de autos (aproximadamente 3.9 onzas conteniendo 26% de heroína) es varias veces mayor que la cantidad mínima requerida por la ley de Nueva York para constituir el delito de posesión de narcóticos en primer grado.

Lo anterior no significa que las cantidades mínimas requeridas por el estatuto de Nueva York sean determinantes para establecer si la cantidad ocupada puede ser usada como estupefaciente. Sin embargo dichas cantidades mínimas nos pueden servir como base de comparación.