EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ERNESTO FIGUEROA CASTRO, acusado y apelante.

*Número:* CR-73-112    *Resuelto:* 22 de mayo de 1974

*Dora Nevárez de Pagán,* abogada del apelante; *Myriam Naveira de Rodón, Procuradora General,* y *Federico Rodríguez Gelpí, Procurador General Auxiliar,* abogados de El Pueblo.

El Juez Asociado Señor Irizarry Yunqué emitió la opinión del Tribunal.

Se acusó a Ernesto Figueroa Castro de dos infracciones a la Ley de Narcóticos de Puerto Rico, 24 L.P.R.A. sec. 974z, alegándose que el 15 de mayo de 1970 tenía en su posesión y dominio (primer cargo) y ocultó y transportó (segundo cargo) la droga narcótica conocida como heroína. Celebrado el juicio ante jurado, éste rindió veredicto de culpabilidad en cuanto al primer cargo y absolvió al acusado del segundo cargo. El 30 de noviembre de 1970 fue sentenciado a la pena de cinco a ocho años de presidio con trabajos forzosos. Oportunamente apeló. Alega la comisión de los errores que pasamos a considerar.

En el primer señalamiento de error alega el apelante:

"Erró el Hon. Juez de Instancia al no declarar absuelto perentoriamente al acusado, según fuera solicitado por la Defensa, y al admitir evidencia material objetada por ésta de:

A) un gotero, una hipodérmica y una chapita que se presentaron en la Vista Preliminar, pero los cuales como cuestión de derecho no podían imputarle delito alguno al apelante ya que no contenían heroína en cantidad susceptible de consumo humano;

Y al soslayar su responsabilidad de decidir, pasándole al jurado la determinación de la admisibilidad de:

B) un deck de heroína que no presentó en la vista preliminar contra el apelante por habérsele imputado originalmente a otra persona."

La prueba del ministerio público consistió en los testimonios de un sargento de la Policía y de un perito químico, y en los objetos que se alega fueron ocupados en manos del apelante en el lugar en que éste fue sorprendido inyectándose. Lo declarado por el sargento y por el químico puede sintetizarse, en lo aquí pertinente, como se indica a continuación.

El sargento dijo que mientras se encontraba en la Barriada Jurutungo de Hato Rey, caminando en servicio de vigilancia, vio que al final de un callejón frente a una casa abandonada,

el apelante estaba en cuclillas en compañía de una menor. La menor y el apelante estaban como a un pie de distancia entre sí. El apelante tenía un gotero en su mano derecha, que contenía un líquido rojizo, y le vio "una aguja la cual tenía introducida en la piel" del brazo izquierdo. El sargento se acercó y pudo agarrar al apelante, quitarle el gotero y sacarle la aguja del brazo. En el suelo entre el apelante y la menor ocupó una carterita negra, la abrió, y en su interior encontró una envoltura de papel rosa "a manera de deck de las que se usa [sic] en el tráfico de drogas" (T.E. Vol. I, pág. 11)., una aguja hipodérmica y un encendedor y una chapita de las "que se usan para tapar litros de ron con algo sobresalido color negro, o sea, quemado" (T.E. Vol. I, pág. 17). Identificó los objetos a que hizo referencia en su testimonio, los cuales entregó al señor Rullán, que es el perito químico, en dos sobres. En el primero puso el gotero y la aguja hipodérmica que ocupó al apelante, el encendedor y la chapita, identificando el sobre con el nombre del apelante. En el segundo sobre colocó la carterita, la aguja hipodérmica que ésta contenía y el deck, y lo identificó con el nombre de la menor.

El químico declaró que examinó el contenido de ambos sobres. Su análisis cualitativo del contenido del primer sobre demostró trazas de alcaloide de opio en la chapita y de alcaloide en el gotero, sin que pudiera decir la cantidad contenida ni si era heroína. El deck que había en el segundo sobre contenía heroína en cantidad suficiente para el consumo humano.

El apelante objetó la prueba en cuanto al segundo sobre basándose en que no fue presentada durante la vista preliminar y era sorpresiva. Su objeción fue desestimada. Presentó el testimonio del abogado que le había representado en dicha vista para establecer que en ella se estipuló el testimonio del químico en cuanto a su informe sobre el contenido del gotero y de la chapita. Aunque en la vista preliminar el sargento habló de un deck de heroína hallado en el lugar de los hechos,

no se ofreció en aquel entonces prueba de ello contra el acusado.

■ Alega el apelante que siendo inadmisibles el *deck* y el análisis químico de su contenido, era insuficiente la prueba para condenarle. Cita a *Pueblo* v. *Márquez Estrada,* 93 D.P.R. 811 (1966). No tiene razón. En primer lugar, el *deck* o envoltura conteniendo heroína hallado en la carterita y el resultado de su análisis químico no eran inadmisibles. El *deck* de heroína fue ocupado en la inmediata presencia del apelante y en el mismo lugar en que fue sorprendido inyectándose. Su pertinencia es manifiesta. El hecho de que el sargento identificase dicha prueba con el nombre de la jovencita que acompañaba al apelante no la excluye para inculparle a él. Tal actuación no estableció ninguna regla de juego obligatoria para el Estado en el proceso contra el apelante.

■ No se hizo inadmisible tampoco dicha prueba porque el fiscal no la ofreciera durante la vista preliminar. El fiscal no viene obligado a presentar en una vista preliminar toda la prueba de que dispone para establecer en su día la culpabilidad del acusado. Le basta con presentar aquella prueba que convenza al magistrado ante quien se celebra la vista de que se ha cometido un delito y de que hay causa probable para creer que el acusado lo cometió. El propósito de la vista preliminar es "evitar que se someta a un ciudadano en forma arbitraria e injustificada a los rigores de un proceso criminal." *Pueblo* v. *López Camacho,* 98 D.P.R. 700, 702 (1970). En la vista preliminar el fiscal no tiene que probar la culpabilidad del acusado más allá de duda razonable. Esa es su obligación en el acto del juicio. Puede por tanto presentar durante el juicio la misma prueba que ofreció durante la vista preliminar, prueba adicional, y aun prueba distinta.

■ En la causa que nos ocupa ni siquiera se trata de la presentación por el fiscal de un testigo adicional. Se trata del ofrecimiento de prueba objetiva—el *deck* o envoltura de heroína—y del testimonio del químico, parte del cual se

estipuló durante la vista preliminar. En lo que respecta a la prueba testifical la Regla 52 de Procedimiento Criminal manda que en el acto de la lectura de la acusación, antes de que se le requiera que formule alegación, deberá entregarse al acusado una copia de la acusación *con una lista de los testigos.* Nada parecido se requiere por dicho ordenamiento procesal ni por ninguna otra disposición de ley respecto de la prueba documental y de la prueba objetiva. Si el acusado interesa conocer la prueba documental y la objetiva con que cuenta el fiscal tiene a su alcance el remedio en la Regla 90 de Procedimiento Criminal. (¹) El apelante pudo valerse de dicha Regla y no lo hizo.

■ El hecho de que la estipulación respecto del testimonio del químico hecha durante la vista preliminar se refiriese únicamente al análisis cualitativo del primer sobre, es decir, el que identificó el sargento con el nombre del apelante, no hacía inadmisible el testimonio del químico respecto del análisis del segundo sobre. Esa circunstancia no estableció un impedimento contra el Estado para ofrecer en el juicio esa otra prueba, muy pertinente sin duda y no afectada por regla alguna de exclusión.

■ Aun si el *deck* o envoltura de heroína y el correspondiente informe fueran inadmisibles, el resto de la prueba hubiese sido suficiente y no procedía la moción de absolución

---

(¹) Dicha Regla dice:
"Previa moción del acusado sometida en cualquier momento después de haberse presentado la acusación, el tribunal podrá ordenar al fiscal que produzca para ser inspeccionados, copiados o fotografiados por el acusado o su abogado, determinados objetos, libros, documentos y papeles que no fueren declaraciones juradas, con excepción de la declaración del propio acusado, que El Pueblo hubiese obtenido del acusado o de otras personas mediante orden judicial o de otro modo y que pudieren ser necesarios para la preparación de la defensa del acusado, independientemente de que El Pueblo se propusiere ofrecerlos en evidencia o de que los mismos fueren admisibles en evidencia. La orden especificará el tiempo, lugar y manera de hacer la inspección, de sacar las copias o tomar las fotografías y podrá prescribir los términos y condiciones que el tribunal estimare justos."

perentoria. *Pueblo* v. *Márquez Estrada,* supra, en que descansa el apelante, se basó en una situación de hechos muy distinta a la de la causa que nos ocupa. En *Márquez Estrada* se le ocuparon al acusado un cuenta gotas y una aguja hipodérmica en que no había trazas de droga alguna, y una chapa conteniendo una cantidad mínima de cristalitos que el químico supuso que eran residuos de alguna droga en cantidad tan pequeña que "cabían en la cabeza de un alfiler." Dijimos, a la pág. 816:

". . . Si bien la posesión de los artículos que le fueron ocupados—la aguja hipodérmica y el cuentagotas—suelen usarse para inyectarse los estupefacientes, *en el presente caso no hay prueba de que hubieran sido usados para ese fin.* Así lo único que puede conectar al acusado con el delito que se le imputó, son los cristalitos que aparecieron en la chapa en cantidad mínima (cabían en la cabeza de un alfiler) y que evidentemente no podían ser usados como estupefacientes. Lo más que esta prueba podía establecer era que el tenedor había poseído narcóticos en alguna ocasión anterior. Es claro, pues, que la regla que hemos adoptado es de aplicación a estos hechos y que procede la revocación de la sentencia." (Énfasis suplido.)

Aquí el apelante fue sorprendido inyectándose. El sargento que lo sorprendió vio que tenía un gotero que contenía un líquido rojizo y vio la aguja introducida en la piel de su brazo izquierdo. Al agarrarlo le quitó el gotero y le sacó la aguja del brazo. No era necesario hallar en el gotero o en el cuentagotas cantidad alguna de alguna droga que fuera suficiente para el consumo humano. El químico que analizó los residuos que quedaban en el gotero y en la chapita determinó la presencia de alcaloide en el gotero y trazas de alcaloide de opio en la chapita. Ya la droga había pasado del gotero al cuerpo del apelante. Era la inferencia que lógicamente tenía derecho a hacer el jurado, aun en ausencia de la prueba sobre el *deck* de heroína. *Cf. Pueblo* v. *Rosario Rivera,* 96 D.P.R. 13, 14–15 (1968) y *Pueblo* v. *Encarnación Encarnación,* 95 D.P.R. 933, 935 (1968).

El segundo apuntamiento de error se refiere a las instrucciones al jurado respecto de los posibles veredictos. Fueron como sigue:

"Con estas instrucciones, señores del Jurado, ustedes habrán de deliberar ahora sobre los méritos de estos casos, de suerte que ustedes pueden traer cualesquiera de los siguientes veredictos, culpable del primer cargo, culpable del segundo cargo, no culpable del primer cargo, o culpable del segundo cargo, o a la inversa, pueden traer un veredicto de culpabilidad después de aquilatar la prueba, y darle el valor que merezcan, pueden traer al acusado culpable de ambos cargos, o no culpable de los dos cargos, o culpable de un cargo y no culpable de otro. Esos son los posibles veredictos que ustedes pueden considerar."

El apelante cita *Pueblo v. Landmark*, 100 D.P.R. 73 (1971) y argumenta que las instrucciones impartidas al jurado "no responden a la prueba desfilada" y que si a base de dicha prueba el jurado concluía que el apelante tenía "conocimiento, dominio, control y por tanto posesión de la droga, necesariamente dada la prueba de autos, tenía que concluir que se había ocultado y transportado hasta allí la heroína." Estamos de acuerdo con la conclusión del apelante de que si él poseía la droga, *alguien* tenía que haberla ocultado y transportado hasta el sitio en que fue sorprendido poseyéndola. Empero, ese alguien no necesariamente tuvo que ser el apelante. Así tenía derecho a determinarlo el jurado y la prueba justificaba la instrucción que permitió veredictos distintos para los dos cargos imputados.

En *Landmark* la prueba consistió en el testimonio de un agente encubierto que declaró que se ganó la confianza del acusado y que el acusado lo condujo hasta un servicio sanitario en la Universidad Interamericana en San Germán y allí sacó de un bolsillo de su pantalón una bolsa plástica conteniendo picadura de marihuana que le vendió al agente por $5.00. Dijimos, a la pág. 77:

". . . La prueba con respecto a los cargos imputados—posesión, transportación y venta—fue la misma para los tres cargos.

Consistió, como hemos visto, del testimonio del agente encubierto con respecto a una simple transacción en que los actos de posesión, transportación y venta ocurren casi simultáneamente. Correspondía exclusivamente al jurado determinar la credibilidad de este testigo. La alternativa era sencilla y libre de confusión: o le daba completo crédito, en cuyo caso venía obligado a traer un veredicto de culpable en los tres cargos, o no se lo daba, en cuyo caso se imponía un veredicto absolutorio en todos los cargos."

Esa afirmación no tiene ni puede tener el alcance de establecer como regla absoluta que cuando la prueba para dos o más cargos consiste en el testimonio de un solo testigo, el veredicto o fallo tiene que ser mandatoriamente igual para todos los cargos. Bajo los hechos de *Landmark* no podían justificarse veredictos distintos. El agente atestiguó sobre una transacción ocurrida entre él y el acusado, sin la intervención de terceros. Si se le creía, por ejemplo, en cuanto a que el acusado tenía en su posesión la picadura de marihuana pero no se le creía en cuanto a que la transportó hasta el servicio sanitario o en cuanto a que la vendió al agente, tenía forzosamente que dudarse seriamente del testimonio de éste sobre el aspecto de la posesión. Siendo ese testimonio la única prueba para sostener el cargo de posesión, hubiese sido forzosa la absolución del acusado en dicho cargo.

El Art. 162 de la Ley de Evidencia, 32 L.P.R.A. sec. 1679, dispone en su tercer párrafo:

"Un testigo que hubiere faltado a la verdad en una parte de su declaración, deberá ponerse en duda respecto a otras."

Interpretando dicha disposición hemos rechazado la aplicación en esta jurisdicción de la máxima *"falsus in unus, falsus in omnibus."* Hemos resuelto que el hecho de que un testigo falte a la verdad respecto de uno o más particulares no autoriza que por ese solo hecho se rechace toda su declaración. *Pueblo* v. *Pacheco Betancourt,* 92 D.P.R. 698 (1965), *Pueblo* v. *Orellano Gómez,* 92 D.P.R. 546 (1965), *Pueblo* v. *Méndez*

*Feliciano,* 90 D.P.R. 449 (1964), *Pueblo* v. *Nazario,* 87 D.P.R. 130 (1963) y *Pueblo* v. *Nieves,* 57 D.P.R. 784 (1940). Es cuando un testigo falta voluntariamente a la verdad en aspectos esenciales de su testimonio que se justifica su rechazo total. *Pueblo* v. *Pérez Escobar,* 91 D.P.R. 10, 17 (1964).

En la causa que nos ocupa, distinto a *Landmark,* el jurado no se enfrentó a una situación de posibles contradicciones en el testimonio del único testigo presencial de los hechos que pudieran justificar la conclusión de que dijo verdad respecto a un cargo y mintió en cuanto al otro cargo de la acusación. Lo cierto es que su testimonio, creído como lo fue, estableció suficientemente en Derecho que el apelante poseía la droga al ser sorprendido inyéctandose. Ese testimonio, sin embargo, no podía justificar un fallo condenatorio por el delito de transportar u ocultar heroína pues no podía dar base ni siquiera a una inferencia contra el apelante de que él la transportó u ocultó. Pudo ser llevada al lugar en que él se inyectaba bien por la menor que lo acompañaba o por una tercera persona. La instrucción dada al jurado por el juez sentenciador fue correcta.

Alega el apelante mediante el tercer apuntamiento de error que el "efecto acumulativo" de los dos primeros errores "constituye una privación del debido procedimiento de ley." No habiéndose cometido dichos errores, no pudo cometerse el tercero, que se hace depender de aquéllos.

■ Considerando que a la fecha en que entraron en vigor los Arts. 602 y 608 de la Ley de Sustancias Controladas, 24 L.P.R.A. secs. 2602 y 2608, estaba pendiente esta causa por haber sido apelada la sentencia, el apelante tiene derecho a acogerse a los beneficios del Art. 404 de dicha ley, 24 L.P.R.A. sec. 2404, que impone penalidades más benignas que la ley bajo la cual fue convicto. *Figueroa Méndez* v. *Tribunal Superior,* 101 D.P.R. 859 (1974). *Cf. Padilla Figueroa* v. *Tribunal Superior,* 101 D.P.R. 933 (1974).

Toda vez que la prueba demuestra que la posesión de la droga por el apelante era para consumo propio le aplicarían, conforme a la "disposición transitoria" original del Art. 608, las penalidades de uno a tres años provistas por el Art. 404 (a) que estuvieron en vigor desde el 23 de junio de 1971 hasta el 31 de mayo de 1972.

*Debe confirmarse el fallo condenatorio y devolverse el expediente a la Sala sentenciadora para que proceda a resentenciar al apelante conforme a lo dispuesto por el Art. 404 de la Ley de Sustancias Controladas, 24 L.P.R.A. sec. 2404.*