EL PUEBLO DE PUERTO RICO, demandante y peticionario, *v.*
JUAN FRANCISCO CONTRERAS, demandado y recurrido.

*Número:* CE-94-464 *Resuelto:* 15 de diciembre de 1995

606

*Pedro A. Delgado Hernández, Procurador General, Carlos Lugo Fiol, Subprocurador General, y Grisel Hernández Esteves, Procuradora General Auxiliar,* abogados de El Pueblo; *Héctor Santiago Rivera,* abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Acude ante nos el Procurador General mediante una petición de *certiorari* y solicita que revoquemos la resolución dictada por el Tribunal de Primera Instancia, Sala Superior, la cual permite que Juan Francisco Contreras Rosario, ciudadano de la República Dominicana convicto en Puerto Rico de los delitos de Práctica Ilegal de la Medicina y Agresión Agravada, cumpla con su sentencia suspendida y resida en su país de origen tres (3) semanas de cada mes. Nos corresponde resolver si una persona convicta de delito en Puerto Rico puede cumplir la sentencia suspendida en un país extranjero. Por entender que ello representa una renuncia del tribunal a ejercer de manera efectiva su custodia legal sobre el probando, revocamos la resolución recurrida.

I

Juan Francisco Contreras Rosario, ciudadano de la República Dominicana, fue acusado de cuatro (4) cargos por la práctica ilegal de la medicina y uno (1) por mutilación. Art. 9 de la Ley Núm. 22 de 22 de abril de 1931 (20 L.P.R.A. sec. 39); Art. 96 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4033. El Ministerio Público logró demostrar que, a pesar de no estar autorizado para ejercer la Medicina en Puerto Rico, Contreras Rosario tenía una ofi-

cina en el edificio El Monte Mall en San Juan, en la cual examinaba a los pacientes y les recomendaba que se realizaran operaciones de cirugía plástica en su clínica radicada en la ciudad de Santo Domingo, República Dominicana. El tratamiento post operatorio era realizado en Puerto Rico.

Además, el Ministerio Público probó que Contreras Rosario intervino quirúrgicamente en su oficina de Puerto Rico a una paciente a quien había realizado una operación de reducción del tamaño de sus senos en la República Dominicana. Contreras Rosario cortó el complejo aureolapezón del seno infectado sin haber obtenido el consentimiento de la paciente. Ésta desarrolló una infección como consecuencia de la cirugía.

El Tribunal de Primera Instancia declaró culpable al acusado de cuatro (4) cargos de práctica ilegal de la medicina y un cargo de agresión agravada en su modalidad grave. La técnica de servicios sociopenales que evaluó a Contreras Rosario recomendó que se le extendiera el beneficio de una sentencia suspendida. Sugirió al tribunal que la sentencia se cumpliese en Puerto Rico para poder efectuar una adecuada supervisión del convicto, dada la ausencia de un convenio de supervisión con la República Dominicana. Además, la oficial probatorio expresó su preocupación al efecto de que "no se le permita [a Contreras Rosario] continuar practicando la Cirugía Plástica en Santo Domingo, ya que entendemos ello representa un riesgo tanto para personas de nuestro país como de otros lugares". Informe de Libertad a Prueba, pág. 23.

Durante la vista del pronunciamiento de la sentencia, la representación legal de Contreras Rosario reconoció la ausencia de un convenio entre la República Dominicana y Puerto Rico en relación con el programa de supervisión de personas acogidas al beneficio de una sentencia suspendida. Solicitó la concesión de una sentencia suspendida con permiso para realizar viajes a la República Domi-

nicana algunos días a la semana para poder practicar la Medicina en dicho país. El Ministerio Público se opuso a dicha solicitud.

El tribunal de instancia procedió a dictar la sentencia. Impuso al convicto cinco (5) años de presidio en cada caso, concurrentes entre sí, y le confirió el beneficio de una sentencia suspendida, sujeto a que cumpliera con las siguientes condiciones:

1–Deberá seguir residiendo en Puerto Rico.

2–Deberá someterse un plan al Oficial Probatorio en términos de viajar a Santo Domingo, determinados momentos y días y ese plan deberá ser posteriormente aprobado por este Juez.

3–No podrá ejercer directa ni indirectamente, ni realizar ningún tipo de gestión profesional en Puerto Rico, que [sic] se pueda entender que está ejerciendo la profesión de medicina en Puerto Rico.

4–Deberá coordinarse por la Oficina del Oficial Probatorio cualquier necesidad de una investigación en Santo Domingo, al costo del propio probando, y deberá éste brindar toda la cooperación necesaria para que esa gestión pueda realizarse en Santo Domingo.

5–Deberá haber un control del pasaporte.

6–Tiene que mantenerse al día en su pensión alimenticia. Apéndice, *Exhibit* VIII, págs. 109–110.

Se celebró una vista posterior al pronunciamiento de la sentencia para establecer el plan de viaje entre la República Dominicana y Puerto Rico, pues el probando y la oficial probatorio no habían podido llegar a un acuerdo. El tribunal estableció que Contreras Rosario pasaría la primera semana de cada mes en Puerto Rico y se debía reportar a la oficial probatorio a cargo de su supervisión. Las restantes tres (3) semanas del mes podría permanecer en la República Dominicana. Su decisión estuvo fundamentada en la necesidad de que Contreras Rosario pudiese ejercer la Medicina en la República Dominicana, para así cumplir con la obligación de pagar la pensión alimentaria de sus hijos, residentes en Puerto Rico.

El Procurador General acude ante nos mediante una

petición *certiorari* y solicita la revocación de dicha resolución. Señala que erró el tribunal de instancia al permitir que el convicto se ausente del país tres (3) semanas al mes durante el cumplimiento de la sentencia. En síntesis, aduce el peticionario que la sentencia suspendida concedida a Contreras Rosario anula para fines prácticos la habilidad del Estado para supervisar continuamente al probando y asegurar que se cumplan los términos de la sentencia.

Por entender que el Tribunal de Primera Instancia cometió un abuso de discreción al permitirle al convicto permanecer en la República Dominicana tres (3) semanas al mes, revocamos.

## II

La Ley Núm. 259 de 3 de abril de 1946, conocida como la Ley de Sentencia Suspendida, 34 L.P.R.A. secs. 1026–1029, según enmendada, confiere a los tribunales la facultad de suspender los efectos de las sentencias que hayan dictado. *Pueblo v. Texidor Seda*, 128 D.P.R. 578 (1991). Los tribunales tienen gran discreción y flexibilidad en la concesión de una sentencia suspendida. *Pueblo v. Valentín*, 135 D.P.R. 245 (1994); *Vázquez v. Caraballo*, 114 D.P.R. 272 (1983); *Pueblo v. Álvarez Maurás*, 100 D.P.R. 620 (1972). No obstante, este Tribunal intervendrá en aquellos casos cuando el tribunal de instancia haya incurrido en un abuso de discreción al denegar o conceder a un convicto los beneficios de una sentencia suspendida. *Pueblo v. Ortega Santiago*, 125 D.P.R. 203 (1990).

En conformidad con la Ley de Sentencia Suspendida, la persona a quien se otorgue dicho beneficio quedará bajo la custodia legal del tribunal hasta la expiración del período fijado en su sentencia. 34 L.P.R.A. sec. 1027. La referida ley dispone, además, que el tribunal sentenciador tiene la facultad para prescribir las condiciones para la suspensión

de la sentencia, y cuando esté convencido de la mala conducta del probando, podrá ordenar su arresto. 34 L.P.R.A. sec. 1031. Asimismo, el tribunal sentenciador podrá revocar la suspensión de la sentencia en cualquier momento cuando, a su juicio, la libertad de la persona convicta sea incompatible con la debida seguridad de la comunidad o con la rehabilitación de la persona delincuente. 34 L.P.R.A. sec. 1029.

■ La ley dispone que el tribunal deberá imponer como condiciones mandatorias para la suspensión de la sentencia que se haga constar por escrito el compromiso del probando de no incurrir en conducta delictiva y de no asociarse con personas reconocidas por su participación en actividades ilegales. 34 L.P.R.A. sec. 1027a. Además, el probando deberá someterse a un programa regular para la detección de sustancias controladas. Íd.

■ No obstante lo anterior, el organismo gubernamental encargado de supervisar a las personas, a quienes se les haya concedido el beneficio de una sentencia suspendida, es la Administración de Corrección. 34 L.P.R.A. sec. 1028. Como parte del plan de supervisión, todo probando deberá someterse a un régimen disciplinario de vida y a un plan de tratamiento cuya duración y condiciones quedarán a discreción de dicha Administración. Íd. Los objetivos principales de la supervisión deben ser la rehabilitación de la persona y la protección de la comunidad. Íd. Estos dos (2) propósitos coexisten.

■ La Ley de Sentencia Suspendida no considera la posibilidad de que un probando resida en un país extranjero. No obstante, nos parece claro que el propósito de la ley sólo puede cumplirse de permanecer el probando bajo la jurisdicción de los tribunales de Puerto Rico. Nos explicamos.

■ En *Toro Ruiz v. J.L.B.P. y otros*, 134 D.P.R. 161 (1993), expresamos que a los fines del procedimiento de

revocación de la libertad bajo palabra, la Junta de Libertad bajo Palabra no tiene plena autoridad sobre una persona que esté en libertad bajo palabra y que se encuentre en otra jurisdicción. Señalamos que la intención de la Asamblea Legislativa fue establecer un procedimiento de revocación de la libertad bajo palabra para liberados que estuviesen en Puerto Rico bajo la custodia de las autoridades del país:

> Los procedimientos de revocación de la libertad bajo palabra establecidos por ley son de tal naturaleza que pueden cumplirse de manera propia, sólo cuando el liberado se encuentre detenido en la jurisdicción territorial de Puerto Rico y bajo la custodia de sus autoridades gubernamentales. *Toro Ruiz v. J.L.B.P. y otros*, supra, págs. 168–169.

■ Las similaridades existentes entre el régimen de libertad bajo palabra y el régimen de sentencia suspendida son muchas. Tanto la libertad bajo palabra como la sentencia suspendida permiten al convicto cumplir con su sentencia o parte de ella en libertad. Ambos regímenes le obligan a aceptar una serie de condiciones bajo la supervisión continua de un oficial probatorio y ambos sistemas de libertad están sujetos a ser revocados en caso de que el convicto viole las condiciones impuestas o cometa un nuevo delito. Véanse: Ley Núm. 118 de 22 de julio de 1974 (4 L.P.R.A. sec. 1501 *et seq.*); Ley Núm. 259, *supra.* Por lo tanto, lo señalado en *Toro Ruiz v. J.L.B.P. y otros*, supra, en cuanto a la libertad bajo palabra, resulta igualmente aplicable al régimen de sentencia suspendida. Veamos.

■ El propósito primordial de la supervisión del convicto a quien se le haya concedido el beneficio de una sentencia suspendida es asegurar el efectivo cumplimiento de la sentencia. N.P. Cohen y J.J. Gobert, *The Law of Probation and Parole*, Colorado, Ed. Shepard's McGraw-Hill, 1983, pág. 372. Es deber del oficial probatorio velar por que el probando cumpla con las condiciones impuestas por el

tribunal como parte de la concesión de la suspensión de la sentencia.

■ Las visitas periódicas al oficial probatorio y el sometimiento a pruebas de detección de sustancias controladas son ejemplos de las condiciones impuestas a los probandos con regularidad. Esto supone una fácil accesibilidad del oficial probatorio al probando. La distancia entre un oficial probatorio y un probando que se encuentre en un país extranjero hace imposible que se pueda asegurar el cumplimiento con estas condiciones. Tomando en consideración lo anterior, entendemos que el contacto continuo entre el probando y el oficial probatorio es esencial para lograr una supervisión adecuada. El contacto continuo asegura que el tribunal sentenciador pueda velar por que se cumplan los objetivos de la rehabilitación del convicto y la protección de la comunidad. Concluimos que la residencia en un país extranjero es incompatible con la supervisión necesaria bajo el régimen de sentencia suspendida.

Más importante aún, permitir que un probando resida en un país extranjero, además de impedir que el Estado cumpla adecuadamente con su obligación de supervisión, dificulta el ejercicio de la autoridad del tribunal en caso de que el probando viole las condiciones de su sentencia y sea necesaria su revocación. Según hemos señalado antes, la Ley de Sentencia Suspendida dispone que el tribunal sentenciador puede revocar el beneficio de la suspensión de la sentencia en cualquier momento cuando, a su juicio, la libertad del convicto sea incompatible con la debida seguridad de la comunidad o con el propósito rehabilitador del delincuente. 34 L.P.R.A. sec. 1029.

■ La facultad del tribunal sentenciador para revocar una sentencia suspendida se basa en que el Estado es fiduciario de intereses públicos que superan a los del convicto. *Pueblo v. Pacheco Torres*, 128 D.P.R. 586 (1991). El tribunal tiene que estar en la posición de hacer valer

dicha facultad. Ello se dificulta cuando un probando se encuentra en un país extranjero, pues la única manera en que se puede intentar recuperar su custodia es mediante el procedimiento de extradición.[1]

 Al igual que en el caso de las jurisdicciones estatales de Estados Unidos, Puerto Rico carece de soberanía para pactar tratados de extradición con otras naciones. Dicha autoridad le corresponde al Gobierno federal. 18 U.S.C. secs. 3181 y 3183. Sólo los tratados crean la obligación de extraditar a una persona fugitiva. L. Henkin, R. Crawford Pugh, O. Schacter y H. Smit, *International Law (Cases and Materials)* 885–890 (1987). No obstante, aun cuando exista un tratado de extradición entre Estados Unidos y el país en que se encuentra el fugitivo, la extradición sólo será posible si el tratado la autoriza en el caso en particular. Íd.

El caso de marras presenta una situación particularmente grave, ya que el tratado suscrito entre Estados Unidos y la República Dominicana no autoriza la extradición de Contreras Rosario. Tratado de Extradición entre Estados Unidos y la República Dominicana, 19 de junio de 1909, 36 Stat. 2468. Dicho tratado incluye una lista taxativa de delitos por cuya acusación o convicción se puede solicitar la extradición de la persona acusada o convicta. Art. 2 (36 Stat. 2568). Los delitos de práctica ilegal de la medicina y la agresión agravada no se encuentran entre los delitos mencionados en el tratado. Además, el tratado establece que ninguna de las partes está obligada a devolver a sus propios ciudadanos. Art. 8 (36 Stat. 2571–2572). En consecuencia, la extradición no procedería en el caso de autos. No existe, por lo tanto, ningún medio que asegure

---

[1] Recuérdese que es un principio reconocido de derecho internacional que un Estado sólo puede ejercer su jurisdicción sobre las personas y los bienes que se encuentren en su territorio. *Toro Ruiz v. J.L.B.P. y otros*, 134 D.P.R. 161 (1993), citando a: *Pennoyer v. Neff*, 95 U.S. 714 (1877); *Medina v. Tribunal Superior*, 104 D.P.R. 346, 348 (1975).

que el tribunal pueda mantener su custodia sobre el probando en la República Dominicana.

Debemos señalar, además, que Estados Unidos ha suscrito tratados especiales para permitir la transferencia de prisioneros y probandos a un país extranjero. No existe, sin embargo, un tratado entre Estados Unidos y la República Dominicana sobre este particular.

Por último, durante nuestra investigación no encontramos jurisprudencia de las jurisdicciones estatales norteamericanas que tratara situaciones similares a la del caso de marras. En la jurisdicción federal, sin embargo, se ha sostenido la necesidad de que probandos extranjeros residan en Estados Unidos durante el cumplimiento de sus sentencias debido a la imposibilidad de que se pueda efectuar una adecuada supervisión en un país extranjero y a las dificultades que acarrea para que el tribunal pueda ejercer su autoridad de exigir el cumplimiento de la sentencia. *U.S. v. Porat*, 17 F.3d 660 (3er Cir. 1994); *U.S. v. Pugliese*, 960 F.2d 913 (10mo Cir. 1992).

## III

En el caso de epígrafe, la técnico de servicios sociopenales de la Administración de Corrección, encargada de la evaluación de Contreras Rosario, recomendó específicamente que éste cumpliese con su sentencia suspendida en Puerto Rico debido a la imposibilidad de supervisarlo de forma adecuada en la República Dominicana. El tribunal de instancia, sin embargo, estimó que una semana al mes que pasara el convicto en Puerto Rico sería suficiente para poder supervisarlo. Discrepamos.

El plan de supervisión aprobado facilita que el probando continúe la práctica de la cirugía plástica que tenía establecida entre Puerto Rico y la República Dominicana. La decisión del Tribunal de Primera Instancia favoreció des-

medidamente el interés del convicto de poder ejercer la Medicina en su país de origen. No protegió con efectividad el interés legítimo del Estado de proteger a la comunidad. Aún más, el efecto práctico del plan de supervisión es la pérdida de todo control sobre el probando, pues nuestros tribunales carecen de jurisdicción sobre el territorio dominicano.

A manera de ejemplo, si el probando incumpliera con el pago de la pensión alimentaria de sus hijos, que es una de las condiciones de su sentencia suspendida, y el tribunal revocara su sentencia, éste podría optar por permanecer en la República Dominicana. Nada podría hacer el tribunal sentenciador para recuperar su custodia.

En conclusión, aunque reconocemos la discreción del tribunal de instancia para conceder el beneficio de una sentencia suspendida, resolvemos que permitir que el probando resida en un país extranjero, la República Dominicana en este caso, impide realizar una efectiva supervisión de éste y dificulta que el tribunal pueda ejercer su autoridad de exigir el cumplimiento de la sentencia. Ello se traduce en una renuncia del tribunal a ejercer la custodia legal del probando, obligación que le impone la Ley de Sentencia Suspendida.

Por los fundamentos antes expuestos, *se revoca la resolución dictada por el Tribunal Superior, Sala de San Juan. Se devuelve el caso al tribunal de instancia para que apruebe un nuevo plan de supervisión para el convicto en conformidad con lo aquí resuelto.*

*Se dictará la sentencia correspondiente.*

El Juez Asociado Señor Rebollo López emitió una opinión concurrente y disidente, a la cual se unió el Juez Presidente Señor Andréu García. El Juez Asociado Señor Fuster Berlingeri disintió sin opinión escrita.

— O —

Opinión concurrente y disidente emitida por el Juez Asociado Señor Rebollo López, a la cual se une el Juez Presidente Señor Andréu García.

La mayoría de los integrantes del Tribunal sostiene, en la opinión que emite en el presente caso, que el "propósito" de la Ley de Sentencia Suspendida únicamente puede cumplirse cuando un "probando" permanece "bajo la jurisdicción de los tribunales de Puerto Rico". Ello, conforme la mayoría, en vista del hecho de que "el *contacto continuo* entre el probando y el oficial probatorio *es esencial* para lograr una supervisión adecuada". (Énfasis suplido.) Opinión mayoritaria, págs. 610 y 612.

Aun cuando estamos contestes en que resulta improcedente, y hasta absurdo, que una persona, convicta de delito, a quien le sea concedido, por nuestros tribunales, el privilegio de una sentencia suspendida pueda "cumplir" dicha sentencia en probatoria, *de manera permanente*, en un *país extranjero*, en relación con el cual ni tan siquiera existe un tratado que permita la extradición de éste, *disentimos* en el presente caso, de manera general, por razón de que entendemos que la mayoría está confundiendo el propósito principal o primordial de la referida Ley de Sentencia Suspendida con la adecuada ejecución o implantación de la misma, y *disentimos*, en específico, por razón de que entendemos que, al decidir como lo hace la mayoría en el presente caso, se está precisamente impidiendo que se logre dicho propósito principal.

I

El propósito primordial de la Ley de Sentencia Suspendida —esto es, el objetivo principal que persigue la misma— lo es la *rehabilitación* en la libre comunidad de una persona que ha sido convicta de determinado delito. No

hay duda de que el objetivo de que esa persona se rehabilite se logra, *entre otros*, por medio de una adecuada y efectiva supervisión, de parte de un oficial probatorio, de la conducta que ese convicto observa en la comunidad.

La experiencia demuestra que esa supervisión, de parte del oficial probatorio, *ni* es, *ni* puede, ser continua; esto es, *no* hay un solo probando hoy día en Puerto Rico que pueda ser "continuamente" supervisado por el oficial probatorio. Ello por distintas razones; la principal de las cuales, *desafortunadamente*, lo es una de tipo económico o presupuestario. Esto es, dado el gran número de probandos y el reducido número de oficiales probatorios, la supervisión de los primeros se reduce a un mínimo. *Por otro lado*, debe mantenerse presente que resulta ser innecesario que ese oficial probatorio tenga contacto diario, o semanal, con el probando; ello independientemente del hecho de que dicha supervisión se pudiera llevar a cabo desde un punto de vista económico.

De manera pues, que el propósito primordial de la Ley de Sentencia Suspendida —cual es, repetimos, la rehabilitación del convicto— *no* depende únicamente de que éste pueda continuamente ser supervisado por el oficial probatorio. Hay *otros factores*, igualmente importantes. Meramente a manera de ejemplo, uno de los factores de mayor envergadura en esta clase de situaciones lo es el que el probando tenga un empleo; ello en vista no sólo de que es un hecho indiscutible que el ocio causa, de ordinario, que el probando incurra en conducta antisocial, sino que la falta de recursos para mantener a su familia causa que el probando trate de conseguir los mismos de manera ilegal.

## II

En el presente caso se trata de un profesional, de un doctor en medicina autorizado únicamente a practicar la misma en su país de origen, Santo Domingo. En Puerto

Rico *no* puede hacerlo. Obligar a esta persona a permanecer, *todo el tiempo*, en Puerto Rico donde, repetimos, no puede ejercer su profesión es condenarlo a la ruina económica, lo cual ciertamente no es conducente a su rehabilitación.

Somos del criterio que el juez de instancia, *con gran juicio y sentido común*, trató de hacer un "balance" dadas las circunstancias específicas del caso, entre el interés del Estado de evitar que el probando vuelva a delinquir y el derecho de éste a ganarse la vida, para él y su familia, ejerciendo su profesión de médico; *todo ello con el propósito de lograr la "rehabilitación" de éste.* Bajo el plan diseñado, ni el tribunal de instancia ni el oficial probatorio, pierde contacto con el probando. Al contrario, éste será "supervisado" una vez al mes por el oficial probatorio, lo cual es más que suficiente. Por otro lado, no puede perderse de vista que —no obstante el hecho de que la conducta en que el recurrido incurriera es una ciertamente criminosa y reprobable— *no* nos enfrentamos a un individuo que representa un peligro para la sociedad.

Es cierto que el probando podría decidir, en uno de sus viajes, permanecer en Santo Domingo y, dado el hecho de que resultaría imposible extraditarlo, así evadir la jurisdicción de nuestros tribunales. Dicho argumento pierde fuerza y eficacia, sin embargo, cuando consideramos el hecho de que el probando puede fácilmente abandonar a Puerto Rico e irse a Santo Domingo, aun sin estar oficialmente autorizado para así hacerlo. Ello en vista de que es un hecho harto conocido que la ausencia de un pasaporte *no* es óbice para que cientos de personas así lo hagan todos los días.

## III

En resumen, y aun cuando estamos de acuerdo con la premisa general de que *no* procede que un probando cumpla su sentencia en probatoria mientras vive, *todo el tiempo*, en un país extranjero, *disentimos* por razón de que en el presente caso concederle permiso al probando para residir *parcialmente* en Santo Domingo resulta ser no sólo procedente sino que aconsejable.