El Pueblo de Puerto Rico, apelado, *v.* Luis Villafañe Fabián y Alberto Contreras Martínez, acusados y apelantes.

Número: CR-93-108          Resuelto: 4 de abril de 1997

*Carlos Lugo Fiol, Procurador General, Jacqueline Novas Debién, Subprocuradora General, y Héctor Clemente Delgado, Procurador General Auxiliar*, abogados de El Pueblo; *Celso Suárez Alicea, Carlos Pérez Sierra, Heyda Vigil McClin*, abogados de la parte apelante; *Rafael Ocasio Rivera, Adelaida Arroyo Brito*, abogados del Concilio de Naturópatas de Puerto Rico, *amicus curiae.*

## RESOLUCIÓN

El 10 de octubre de 1995 dictamos una sentencia en la cual confirmamos las condenas de reclusión impuestas a los apelantes por el delito de práctica ilegal de la medicina. *Pueblo v. Contreras*, 139 D.P.R. 604 (1995). Éstos presentaron, de forma oportuna, una moción de reconsideración de la sentencia referida.

Con posterioridad a la presentación de dicha moción, el 28 de octubre de 1995 la Asamblea Legislativa de Puerto

Rico aprobó la Resolución Conjunta Núm. 514, 12ma Asamblea Legislativa, 6ta Sesión Ordinaria, por medio de la cual se concedió una moratoria de un (1) año a los profesionales de la Naturopatía para que éstos pudieran continuar con su práctica sin estar sujetos a ser procesados en lo criminal por ejercicio ilegal de la Medicina durante ese período. *Se expresó que esta medida era necesaria para brindar tiempo a la Asamblea para preparar y analizar "legislación que recoja los principios de esa práctica con el propósito de reglamentarla".* Íd., pág. 1.

A los fines de poder evaluar la moción de reconsideración, a la luz de la Resolución Conjunta Núm. 514, el 9 de febrero de 1996 concedimos un término al señor Procurador General de Puerto Rico (Procurador General) "para que ilustre a este Tribunal sobre el efecto que pueda tener cualquier legislación, aprobada con posterioridad a la sentencia emitida en el presente caso, sobre la referida Sentencia".

Con dicho requerimiento cumplió el señor Procurador General mediante escrito presentado el 4 de marzo de 1996. Sostuvo dicho funcionario que *"al presente, no se contempla posibilidad alguna de que mediante la aprobación de un estatuto retroactivo pueda legalizarse la conducta en que incurrieron los apelantes al ser procesados criminalmente por el ejercicio ilegal de la medicina".* Expresó que "al momento en que éstos cometieron los actos que dieron lugar a su encauzamiento regía una norma de derecho expresa que penalizaba su curso de conducta, en ausencia de una licencia válidamente expedida por el Tribunal Examinador de Médicos". Finalmente, concluyó que "las convicciones de los apelantes son válidas y deben prevalecer". Íd.

El 21 de marzo de 1996, mediante resolución requerimos del señor Procurador General que ampliara su comparecencia "a la luz, y en específico, de las disposiciones del Artículo 4 del vigente Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3004". Nuevamente cumplió el mencionado

representante del Estado mediante un nuevo escrito presentado el 12 de abril de 1996.

A la luz de tales comparecencias, resolvemos.

El segundo y tercer párrafo del Art. 4 del Código Penal, *supra,* constituyen la parte pertinente a la situación que nos preocupó y que nos movió, *sua sponte,* que habrían de ser ilustrados sobre ellos. Dichos párrafos disponen:

> Si la ley vigente al tiempo de cometerse el delito fuere distinta de la que exista al imponerse la sentencia, se aplicará siempre la más benigna.
> Si durante la condena se aprobare una ley más benigna en cuanto a la pena o al modo de ejecución de la misma se limitará a lo *establecido por esa ley.* (Énfasis suplido.)([1])

Sobre la aplicación de tales párrafos al caso de autos, nos ha ilustrado persuasivamente el señor Procurador General del modo siguiente:

> Si la nueva ley favorece al acusado "en cuanto a la pena o al modo de ejecución", el convicto recibe el beneficio de la pena más benigna aunque la nueva ley entre en vigor luego del pronunciamiento de la sentencia, durante la condena. Así pues, de conformidad con los párrafos segundo y tercero del Artículo 4 del Código Penal, habría que distinguir entre:
> (1) Elementos de responsabilidad criminal -esto incluye los elementos del delito, causas de justificación o inculpabilidad, inimputabilidad, etc.; y,
> (2) Elementos sobre la pena -esto incluye su magnitud o duración, y factores tales como abusos de reclusión, probatoria, libertad bajo palabra, etc.
> De conformidad con el segundo párrafo del Artículo 4 de nuestro Código Penal, en cuanto a lo primero (responsabilidad criminal del acusado) la nueva ley más favorable al acusado sólo se le aplicará a éste si estaba vigente al momento del pronunciamiento de la sentencia. Esto tiene mucho sentido. Se

---

([1]) El 19 de septiembre de 1996 se aprobó la Ley Núm. 239 (24 L.P.R.A. secs. 334–334i), la cual expresamente dispone en su exposición de motivos, lo resuelto en este caso. El efecto de nuestra decisión fue el de confirmar las sentencias impuestas a los apelantes por los hechos que se expresan en la opinión y que a juicio de este Tribunal constituyen el delito imputado a éstos por el Estado. A pesar de que es a la Asamblea Legislativa a quien le corresponde constitucionalmente determinar si un estatuto que descriminaliza un acto que anteriormente estaba prescrito, debe o no aplicarse de forma retroactiva, nada expresó dicho cuerpo en ese sentido.

trata de no imponer una pena en un momento que la ley penal considera que la conducta imputada al acusado no debe ser objeto de sanción en la esfera penal. Sobre esto nos dice así el profesor Sebastían Soler, en su obra, *Derecho Penal Argentino*, Tipográfica Editora Argentina, Buenos Aires, 1976, Vol. I, a la pág. 188, comentando el Artículo 2 del Código Penal Argentino:

La ley que quita carácter delictivo a un hecho anteriormente reprimido, cobra plena aplicación, por ser innecesario a la defensa social mantener bajo pena esa determinada clase de actos, y en consecuencia, es repugnante el mantenimiento de sanciones que el legislador estima innecesaria.

Y, poco más adelante añade que "[s]"i la nueva ley quita el carácter delictivo a un hecho que anteriormente lo tenía, nadie duda tampoco de que la sentencia debe conformarse con la nueva ley." *op. cit.*, a la pág. 189.

En lo relativo a disposiciones más favorables al acusado en cuanto a la pena, se aplica el tercer párrafo del Artículo 4 y la ley más favorable beneficia al acusado aunque hubiera entrado en vigor después del pronunciamiento de la sentencia.

En cuanto al último párrafo del Artículo 4 que declara que "los efectos de la nueva ley operarán de pleno derecho", esto significa que el principio de favorabilidad opera sin pedirlo nadie, por lo que puede y debe ser aplicado por el tribunal aunque el acusado no lo solicite. Sobre el particular véase, Zaffaroni, *o[p.] cit.*, a la pág. 186.

A la luz de todo lo anterior, podemos concluir que ante el claro texto del segundo párrafo del Artículo 4 de nuestro Código Penal la moratoria legislativa dispuesta en la Resolución Conjunta Núm. 514 de 28 de octubre de 1995 no tendría ningún efecto sobre las convicciones de los apelantes. Nótese que dicha disposición estatutaria no estaba vigente al momento del sentenciamiento de los acusados y *lo decisivo es la sentencia dictada por el Tribunal de Primera Instancia en el acto de pronunciamiento de la sentencia*, a tono con lo resuelto por este Honorable Tribunal en *Pueblo v. Rosso Vázquez, supra*, a la pág. 910. De hecho, dicha moratoria se legisló luego de que este Alto Foro resolviera el recurso apelativo que ahora nos ocupa, y aún así, nada se dispuso con respecto a que la misma tendría efecto retroactivo. *Si el legislador hubiera querido extender el beneficio de la moratoria a los apelantes así lo hubiera dicho expresamente, o le hubiera dado fecha de vigencia retroactiva.* Además de lo anterior, por tratarse dicha moratoria de una ley temporera, ésta se encuentra fuera del principio de favorabilidad. Soler, *o[p.] cit.*, a las págs. 194–197; Bacigalupo, *o[p]. cit.*, a las págs. 60–61; Jiménez de Asúa, *Tratado de Derecho Penal*, Cuarta Edición, Lozada, Buenos Aires, Vol. II, págs. 640–651. (Escolio omitido y énfasis suplido y en el original.)

Escrito en cumplimiento de resolución de 12 de abril de 1996, págs. 4–6.(²)

Por estar de acuerdo con el razonamiento del señor Procurador General en apoyo de su conclusión de que las convicciones de los apelantes son válidas y deben prevalecer, *se deniega la moción de reconsideración presentada por éstos.*

Lo acordó el Tribunal y certifica el señor Secretario del Tribunal Supremo. El Juez Asociado Señor Hernández Denton emitió una opinión de conformidad, a la cual se unió el Juez Presidente Señor Andréu García. El Juez Asociado Señor Rebollo López emitió una opinión disidente. Los Jueces Asociados Señora Naveira de Rodón y Señor Fuster Berlingeri disintieron sin una opinión escrita.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario del Tribunal Supremo*

— O —

Opinión de conformidad emitida por el Juez Asociado Señor Hernández Denton, a la cual se une el Juez Presidente Señor Andréu García.

Estamos conformes con la resolución emitida por este Tribunal, la cual deniega la reconsideración de la opinión emitida en *Pueblo v. Contreras*, 139 D.P.R. 604 (1995). En esa decisión confirmamos las respectivas convicciones de los apelantes Luis Villafañe Fabián y Alberto Contreras Martínez por el delito de práctica ilegal de la Medicina, que consiste en ejercer la Naturopatía sin una licencia expedida por el Tribunal Examinador de Médicos. Art. 9 de la Ley Núm. 22 de 22 de abril de 1931 (20 L.P.R.A. sec. 39). En su escrito, los apelantes solicitan que revoquemos sus respectivas sentencias al aplicar el principio de legalidad. Concluimos que sus argumentos carecen de mérito.

---

(²) Veáse esc. 1.

I

El tracto procesal del caso de autos se remonta a la presentación de cargos por parte del Ministerio Público contra los aquí apelantes por ejercer de forma ilegal la medicina. Después de la celebración del juicio, el Tribunal de Primera Instancia, Sala Superior de San Juan, dictó sentencias de culpabilidad contra Villafañe y Contreras por practicar la Naturopatía sin poseer una licencia expedida por el Tribunal Examinador de Médicos. En apelación, confirmamos las convicciones.

Los apelantes presentaron oportunamente una moción de reconsideración. Mientras evaluábamos los méritos de su petición, la Asamblea Legislativa aprobó la Resolución Conjunta Núm. 514 de 28 de octubre de 1995, 12ma Asamblea Legislativa, 6ta Sesión Ordinaria (en adelante R.C. 514) que decretó una moratoria de un (1) año a los profesionales de la Naturopatía "para proteger[los] ... de los efectos creados por la Opinión del Tribunal Supremo". Íd., pág. 2. Cabe destacar que *en esta resolución no se indicó que la moratoria aplicara a los aquí apelantes. En ningún momento se hizo referencia a éstos, ni se dispuso su efecto retroactivo.*

Posteriormente se aprobó la Ley Núm. 239 de 19 de septiembre de 1996 (en adelante la Ley Núm. 239), 20 L.P.R.A. sec. 11n, que autoriza y regula provisionalmente la práctica de la naturopatía hasta el 31 de diciembre de 1997. En ésta se establecen los requisitos académicos o de experiencia necesarios para obtener la acreditación como naturópata, a la vez que se crea el Comité de Naturopatía, ente encargado de otorgar autorizaciones a las personas interesadas en ejercer como naturópatas. Nuevamente, en esta pieza legislativa *nada se dispuso con respecto a los aquí apelantes ni se decretó el efecto retroactivo de la medida.*

Oportunamente le concedimos término a las partes para que explicaran qué efecto podían tener las piezas legislati-

vas aprobadas, sobre las referidas convicciones, a la luz de lo dispuesto en el Art. 4 del Código Penal, 33 L.P.R.A. sec. 3004, que regula la aplicación temporal de la ley penal. Con el beneficio de las comparecencias del Procurador General y de los apelantes procedemos a evaluar los méritos de la reconsideración.

## II

En nuestro análisis resulta imperioso examinar la doctrina de la aplicación temporal de la citada ley penal para determinar si la R.C. 514 y la citada Ley Núm. 239 tienen algún impacto sobre la situación de los apelantes.

Es un principio cardinal del derecho penal que las leyes penales no se aplicarán a hechos ocurridos antes de su vigencia. Tanto la Constitución de Puerto Rico como la de Estados Unidos contienen esta prohibición contra las leyes *ex post facto*. Art. II, Sec. 12, Const. E.L.A., L.P.R.A., Tomo 1; Art. I, Sec. 9(3), Const. EE. UU. Sobre este particular, el Art. 4 del Código Penal de Puerto Rico, *supra*, establece:

Las leyes penales no tienen efecto retroactivo, salvo en cuanto favorezcan a la persona imputada de delito.
*Si la ley vigente al tiempo de cometerse el delito fuere distinta de la que exista al imponerse la sentencia, se aplicará siempre la más benigna.*
Si durante la condena se aprobare una ley más benigna en cuanto a la pena o al modo de ejecución la misma se limitará a lo establecido por esa ley.
En los casos de la presente sección los efectos de la nueva ley operarán de pleno derecho. (Énfasis suplido.)

Este articulado postula varios principios entre los que figura el principio de la favorabilidad de la ley penal, el cual es una excepción al principio de la no retroactividad de la ley penal. La razón de ser de este principio es que "carece de sentido dictar o mantener la ejecución de penas por hechos que ya no se consideran delitos o cuando la gravedad de las penas aparece como desproporcionada". E.

Bacigalupo, *Manual de Derecho Penal*, Bogotá, Ed. Temis, 1989, págs. 60–61.

En el caso de autos sostenemos que no procede evaluar la benignidad de la R.C. 514, pues el principio de derecho penal cobija exclusivamente a las leyes y no alude a las resoluciones conjuntas. En este contexto, delimitaremos el análisis a la Ley Núm. 239, *supra*, aprobada durante la consideración de la moción de reconsideración de la sentencia emitida por este Tribunal.

El profesor Chiesa establece: "Aun bajo el derecho continental-latinoamericano, valga señalar que, si bien es cierto que se favorece la retroactividad de la ley más favorable al acusado, incluyendo la intermedia más favorable al acusado, se reconoce la excepción de las leyes penales temporales." E.L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1992, Vol. II, pág. 571. Se denominan leyes penales temporales a aquellas que tienen prefijado en su texto el tiempo de su vigencia. Bacigalupo, *op. cit.*, pág. 60. Estas leyes temporales cederán a plazo fijo a otras y no le es de aplicación el principio de la retroactividad de la ley más favorable. Bacigalupo, *op. cit.*, pág. 61.

Por su parte, Sebastián Soler coincide en que las leyes temporales al tener fijas en sí mismas su duración, *hacen que la doctrina de aplicación de la ley más benigna las excluya*. De aplicarse ese principio se obtendría la total ineficacia de la ley temporera, pues al concluir su término entraría en vigor de nuevo la ley que le precedió. S. Soler, *Derecho Penal argentino*, 3ra reimp., Buenos Aires, Tipográfica Editora Argentina, 1956, T. I, pág. 213.

En iguales términos se expresa Jiménez de Asúa cuando sostiene que "[e]s incuestionable que las leyes temporales y transitorias carecen de efecto retroactivo; es decir, que no pueden aplicarse a hechos perpetrados con anterioridad a su promulgación". (Énfasis suprimido.) L. Jiménez de Asúa, *Tratado de Derecho Penal*, 3ra ed. rev., Buenos Aires, Ed. Lozada, 1964, Vol. 2, pág. 646.

Uno de los peligros de poner en práctica el principio de aplicación retroactiva de la ley más benigna en las leyes temporales, es que individuos particulares recurran a la Asamblea Legislativa para obtener una legislación tempo-rera que los exima de responsabilidad criminal. Transcu-rrido el término de duración de la pieza legislativa, el de-recho volvería a su estado original. Precisamente para evitar estas situaciones es que se excluye a las leyes tem-porales de la aplicación del mencionado principio.

Queda claramente establecido que el principio de apli-cación retroactiva de la ley más benigna *no aplica en el caso de las leyes temporales.* En el caso de autos es un hecho que la Ley Núm. 239, *supra,* es una ley temporal, pues tiene una duración limitada de un (1) año. La misma estará en vigor hasta el 31 de diciembre de 1997. En este contexto, concluimos que *la doctrina de benignidad es to-talmente inaplicable al caso de autos.*

## III

Por otra parte, somos del criterio que tampoco procede considerar el carácter prospectivo de nuestra decisión en *Pueblo v. Contreras,* supra. Al interpretar una ley penal por primera vez, para aclarar o delimitar su alcance, este Tribunal aplica dicha interpretación a las partes ante sí siempre que ésta no sea inesperada o impredecible.[1] Esta característica del proceso interpretativo de la ley penal queda plasmado adecuadamente en las palabras del Profe-sor Hall:

It is true, of course, that in a literal sense all case-law, inclu-

---

[1] Si la decisión del Tribunal es impredecible o inesperada, no podría aplicarse retroactivamente a las partes ante el Tribunal, pues se activaría la protección contra leyes *ex post facto* y el debido proceso de ley, ya que se violaría el principio de legalidad. Ésta no es la situación del caso de autos, en la que resolvimos que de una lectura integral del estatuto sobre práctica ilegal de la Medicina se desprende el interés de penalizar toda conducta que pudiera tener un efecto detrimental sobre los servicios de salud, incluyendo la Naturopatía cuando se ejerce sin contar con una licencia del Tribunal Examinador. Ciertamente esta interpretación, no es impredeci-ble o inesperada.

ding judicial interpretations of statutes or codes, operates retroactively. For despite the traditional theory of pre-existing, all-inclusive law, *the fact is that there are many gaps*; and it is the subsequent decision which reaches back into time and places the authoritative stamp of criminality upon the prior conduct. *But such "retroactivity" is an essential aspect of any legal system.* (Énfasis suplido.) J. Hall, *General Principles of Criminal Law*, 2da ed., Indiana, Ed. Bobbs-Merrill Co., 1960, pág. 61.

Distinto sería el caso en que en una opinión judicial, que interprete un estatuto penal, se revocaran precedentes anteriores en los cuales se brindaba una interpretación distinta. Es en estos casos que procedería considerar el carácter prospectivo de tal decisión. Véanse: *Bouie v. City of Columbia*, 378 U.S. 347 (1964); D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General*, 3ra ed. rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, 1995, pág. 104. Esa no es la situación del caso de autos, ya que nunca antes este Tribunal se había expresado sobre si la Naturopatía estaba comprendida en la prohibición de ejercer la Medicina ilegalmente, por lo que nuestra opinión en *Pueblo v. Contreras*, supra, no revocó precedentes anteriores interpretativos de dicha ley. De esta manera no procede considerar el carácter prospectivo de nuestra decisión.[2]

## IV

Finalmente estimamos prudente expresar que somos conscientes del gran interés público del cual está revestida la controversia de autos. Sin embargo, debemos enfatizar el hecho de que fue el Ministerio Público quien inició y promovió el proceso criminal contra los apelantes. En todas las etapas del proceso criminal, tanto el Ministerio Público como el Procurador General han sostenido que los

---

[2] Para una opinión contraria, véase E.L. Chiesa Aponte, *Derecho Penal*, 66 Rev. Jur. U.P.R. (para publicación en abril de 1997).

apelantes violaron la Ley Núm. 22, *supra,* sobre la práctica ilegal de la Medicina.

No es hasta después que confirmáramos las convicciones de Villafañe y Contreras que la Asamblea Legislativa actuó para conceder una moratoria a las personas que ejercían la Naturopatía. En ésta *no se incluyó ni se hizo referencia alguna a los aquí apelantes.* Como bien se expresa en la Resolución que hoy emitimos, pág. 842: *"Si el legislador hubiera querido extender el beneficio de la moratoria a los apelantes así lo hubiera dicho expresamente, o le hubiera dado fecha de vigencia retroactiva".* (Énfasis en el original.) Citando el Escrito en cumplimiento de resolución de 12 de abril de 1996, pág. 6.

Igual suerte tuvieron Villafañe y Contreras respecto a la Ley Núm. 239, *supra,* en la cual no se estableció que les aplicara. *No le corresponde a este Tribunal despenalizar una conducta tipificada en nuestro ordenamiento penal ya sea por presiones públicas o para remediar las omisiones de la Asamblea Legislativa.* Como la Asamblea Legislativa no dispuso que la nueva legislación temporal beneficiara a los apelantes, le corresponde al Gobernador del Estado Libre Asociado de Puerto Rico, Hon. Pedro Rosselló González, mediante un indulto, resolver la situación actual de Villafañe y Contreras, si es que esta rama del Gobierno desea eximirlos de la aplicación de la Ley Núm. 22, *supra,* sobre la práctica ilegal de la Medicina.

Por las razones antes expuestas, estamos conformes con la resolución que hoy emite este Tribunal para denegar la Moción de Reconsideración de los apelantes.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Lo ilógico de la determinación tomada en el presente caso por una mayoría de los integrantes del Tribunal —al

850

denegar la solicitud de reconsideración radicada por los apelantes Villafañe Fabián y Contreras Martínez— es tan patente y monumental que la misma causa profunda consternación en nuestro ánimo.

El dictamen mayoritario crea un estado jurídico contradictorio y absurdo por cuanto, conforme al mismo, los referidos apelantes deberán servir, en probatoria, unas penas de prisión en relación a conducta —práctica de la Naturopatía— en la cual hoy en día pueden incurrir de manera legal. Dicho de manera más sencilla, y conforme lo hoy resuelto por la mayoría, *los apelantes Villafañe Fabián y Contreras Martínez pueden hoy practicar la Naturopatía sin ser penalizados por ello y sin violar las condiciones de la sentencia suspendida que, precisamente, les fuera impuesta por la práctica de la misma.*

La errónea acción mayoritaria pasa por alto e ignora totalmente no sólo lo preceptuado por el Art. 4 del vigente Código Penal, 33 L.P.R.A. sec. 3004, y por nuestra jurisprudencia interpretativa del mismo, sino también las ilustrativas palabras, entre otras, del tratadista Maggiore a los efectos de que "cuando el Estado, quien es el único intérprete de la conciencia jurídica del pueblo, le quita el carácter de delito a un hecho que anteriormente era delictivo, ello es señal de que ya no tiene interés en castigarlo. *Por lo tanto, nadie deberá ser castigado por un hecho que según ley posterior no constituye delito".*[1] (Énfasis suplido.)

I

Luis Villafañe Fabián y Alberto Contreras Martínez fueron declarados culpables y convictos de infringir el Art. 9 de la Ley Núm. 22 del 22 de abril de 1931 (20 L.P.R.A. sec. 39) —esto es, del delito grave de práctica ilegal de la Medicina— por razón de haber practicado la "Naturopatía" sin poseer una licencia expedida por el Tribunal Examina-

---

[1] Citado por la profesora D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General*, 3ra ed. rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, 1995, pág. 91.

dor de Médicos. Como consecuencia de dichas convicciones, fueron sentenciados por el antiguo Tribunal Superior de Puerto Rico, Sala de San Juan, a cumplir cada cual una pena de dos (2) años de reclusión bajo el régimen de la Ley de Sentencia Suspendida.

Inconformes, Villafañe Fabián y Contreras Martínez apelaron dichas convicciones y sentencias ante este Tribunal, imputándole al foro de instancia la supuesta comisión de cuatro (4) errores. Mediante opinión y sentencia en *Pueblo v. Contreras*, 139 D.P.R. 604 (1995), este Tribunal confirmó las sentencias recurridas, sosteniendo que el practicar la "Naturopatía", sin tener la correspondiente licencia para ello, constituye práctica ilegal de la Medicina.[2]

Los apelantes radicaron, *en tiempo*, una moción de reconsideración. A los fines de evaluar la misma, mediante Resolución de 9 de febrero de 1996, le concedimos término a la Oficina del Procurador General de Puerto Rico para que ilustrara "a este Tribunal sobre el efecto que pueda tener cualquier legislación, aprobada con posterioridad a la Sentencia emitida en el presente caso, sobre la referida Sentencia". Dicha resolución se refería al hecho de que la Asamblea Legislativa de Puerto Rico, con posterioridad a la opinión mayoritaria emitida, aprobó el 28 de octubre de 1995 una "resolución conjunta" mediante la cual se le concedió a los naturópatas una "moratoria" de un (1) año; período de tiempo durante el cual éstos podían practicar la Naturopatía sin estar sujetos a ser procesados criminalmente por la práctica ilegal de la Medicina.

El Procurador General compareció en cumplimiento de nuestra Resolución de 9 de febrero de 1996. Insatisfechos con dicha comparecencia, el Tribunal instruyó a éste —mediante Resolución del 21 de marzo de 1996— para que "ampliara" su comparecencia, "ello a la luz, y en específico, de las disposiciones del Artículo 4 del vigente Código Penal de Puerto Rico". El Procurador General así lo hizo.

---

[2] De dicha opinión y sentencia disintieron los Jueces Asociados Señora Naveira de Rodón, Señor Fuster Berlingeri y el Juez suscribiente.

Por su parte, la Asamblea Legislativa de Puerto Rico actuó nuevamente sobre el asunto. El 19 de septiembre de 1996, y mediante la Ley Núm. 239 de esa misma fecha, la Legislatura autorizó la práctica de la Naturopatía hasta el 31 de diciembre de 1997. Ese es el "estado de derecho" actualmente vigente en nuestra jurisdicción.

## II

No cuestionamos, ni está en discusión, el "postulado básico de nuestro ordenamiento penal de que la ley aplicable a unos hechos delictivos es aquélla vigente al tiempo de cometerse el delito". (Énfasis suprimido.) *Pueblo v. Rexach Benítez*, 130 D.P.R. 273, 301 (1992). Esto es, y conforme resolviera, de manera mayoritaria, este Tribunal en la opinión y sentencia que originalmente emitiera en el presente caso, los apelantes Villafañe Fabián y Contreras Martínez en efecto practicaron ilegalmente la medicina en las fechas en que así se lo imputó el Ministerio Fiscal, es decir, para el mes de mayo de 1991.

Ahora bien, sobre lo que sí diferimos de la mayoría es en relación al efecto que tuvo, sobre las convicciones decretadas, la acción legislativa de quitarle ("descriminalizar") el carácter delictivo a la conducta, por la cual fueron convictos los apelantes, mediante la aprobación de la "Resolución conjunta" de 28 de octubre de 1995, y la citada Ley Núm. 239 de 1996 *mientras las sentencias impuestas a los apelantes aún no habían advenido "firmes"*; ello al amparo de las disposiciones del citado Art. 4 del vigente Código Penal.

Establece la antes mencionada disposición estatutaria que:

> Las leyes penales no tienen efecto retroactivo, salvo en cuanto favorezcan a la persona imputada de delito.
>
> *Si la ley vigente al tiempo de cometerse el delito fuere distinta de la que exista al imponerse la sentencia, se aplicará siempre la más benigna.*
>
> Si durante la condena se aprobare una ley más benigna en

cuanto a la pena o al modo de ejecución la misma se limitará a lo establecido por esa ley.

En los casos de[l presente artículo] los efectos de la nueva ley operarán de pleno derecho. (Énfasis suplido.)

En cuanto a la primera oración, o párrafo, del antes transcrito artículo 4, ha expresado este Tribunal que "[e]n esta primera oración del Art. 4 del Código Penal, [ante,] está contenida la prohibición constitucional contra las leyes *ex post facto*, (Art. II, Sec. 12, Const. E.L.A., L.P.R.A., Tomo 1) así como el principio de retroactividad de la ley penal más benigna". *Pueblo v. Rexach Benítez*, ante, pág. 301.

*Es la segunda oración, o párrafo, del mencionado artículo 4, alrededor de la cual gira la correcta solución de la controversia legal hoy ante nuestra consideración.* Dicha oración, o párrafo, contempla la situación o alternativa de la entrada en vigor en nuestro ordenamiento de una ley que "descriminaliza" una conducta que anteriormente, y al momento de cometerse los hechos, se consideraba delictiva cuando todavía el proceso penal, iniciado al amparo de la legislación original, y la sentencia a imponerse o impuesta *no* es "final y firme".

El Procurador General de Puerto Rico en sus dos (2) comparecencias postula la peregrina teoría —la cual, de manera inexplicable, acoge la mayoría de los integrantes del Tribunal— de que la segunda oración, o párrafo, del citado Artículo 4 *únicamente* es de aplicación al momento de dictarse, o imponerse, la sentencia a nivel del tribunal de instancia. Esto es, erróneamente sostiene el Procurador General, y la mayoría, que si la ley que "descriminaliza" la conducta entra en vigor —como en el presente caso— con posterioridad a haber sido sentenciada la persona por el tribunal de instancia, dicha ley no tiene efecto alguno sobre esa condena, ello independientemente de que el caso esté en apelación y, en consecuencia, la sentencia impuesta todavía no sea "firme".

Dicha peregrina y errónea teoría *no* encuentra apoyo ni

en la doctrina ni en nuestras decisiones.(³) La misma es indicativa de la confusión reinante en las mentes de algunas personas sobre la diferencia entre una sentencia que es meramente "final" y una que es "final y firme".

Como es por todos sabido, *lo cual no amerita mucha argumentación,* una sentencia "final" es aquélla contra la cual puede instarse un recurso de apelación por no haber transcurrido todavía el término, que dispone el ordenamiento, dentro del cual el convicto tiene que radicar el correspondiente recurso de apelación. Una sentencia que es "final y firme", por otro lado, es aquélla contra la cual no cabe recurso de apelación, ello por haber transcurrido el mencionado término y/o por razón de que, radicado el recurso de apelación, el tribunal apelativo confirmó la misma y los términos de reconsideración ya transcurrieron. Así lo resolvimos desde hace más de ochenta (80) años en *Bolívar v. Aldrey, Juez de Distrito,* 12 D.P.R. 273 (1907).

En el presente caso, una vez sentenciados los apelantes por el foro de instancia, éstos ejercitaron en tiempo el derecho de apelación que les concede nuestro ordenamiento jurídico. Esto es, a pesar de que las sentencias impuestas por el foro de instancia pueden ser consideradas como "finales", *las mismas todavía, y al día de hoy, no son "firmes".*

---

(³) Resulta, cuando menos, curioso que uno de los tratadistas que más cita el Procurador General en apoyo de su errónea posición —el argentino Sebastián Soler— *realmente no sostiene la misma;* esto es, aparentemente el Procurador malinterpretó lo expresado por dicho tratadista. Soler, en su obra *Derecho Penal Argentino,* Buenos Aires, Tipográfica Editora Argentina, 1956, T. I, págs. 205–206, expresa, en lo pertinente, que:

"(b) la ley nueva que quita carácter delictivo a un hecho anteriormente reprimido, cobra plena aplicación, *por ser innecesario a la defensa social mantener bajo pena esa determinada clase de actos, y en consecuencia, es repugnante el mantenimiento de sanciones que el legislador estima innecesarias*: principio de mínima suficiencia: *no ultraactividad.*

"De acuerdo con nuestro sistema, tales principios no reconocen excepción alguna, *y ellos se aplican de pleno derecho, no sólo en las causas pendientes,* sino también en cuanto a las penas impuestas, siempre que la ley más benigna se dictare antes de o durante el cumplimiento de aquéllas." (Énfasis suplido.)

Como podemos notar, Sebastián Soler va aun más lejos que la mayoría de los tratadistas que han escrito al respecto. Soler postula la teoría de que la ley benigna debe ser aplicada, incluso, a situaciones en que las sentencias son "finales y firmes"; posición que, por los fundamentos que más adelante expondremos, no suscribimos.

Los casos, en consecuencia, están "vivos" y pueden ser objeto de la aplicación de las disposiciones del citado Art. 4 del Código Penal.

Al respecto, nos ilustra Luis Jiménez de Asúa:

> Si antes de la promulgación de la nueva ley sobreviene *sentencia aun no irrevocable, por ser susceptible de apelación* o de recurso de casación, no ofrece duda que la ley nueva más favorable al acusado debe ser la aplicable. ... También se ha reconocido así en Italia, después de numerosas sentencias que lo negaban. (Énfasis suplido.)([4]) L. Jiménez de Asúa, *Tratado de Derecho Penal*, 3ra ed. rev., Buenos Aires, Ed. Losada, 1964, T. II, pág. 674.

Ello no obstante, postula el citado tratadista que:

> Transcurrido el término dentro del cual se admite la impugnación de la sentencia, o declarados inadmisibles los recursos concedidos por las leyes, el fallo asume el valor de *cosa juzgada*; es decir, se convierte en firme e irrevocable. La cosa juzgada, poniendo fin a la *litis*, establece, de modo absoluto e irrebatible, los derechos y las obligaciones de las partes, o la culpabilidad o la inocencia de los acusados. Jiménez de Asúa, *op. cit.*, pág. 674.

Esa es la posición que al respecto ha adoptado este Tribunal. Reiteradamente hemos resuelto que, *mientras la sentencia apelada no sea "firme"*, un apelante tiene derecho —al amparo de las disposiciones del citado artículo 4— a recibir los beneficios de una ley más benigna. A esos efectos, expresamos en *Pueblo v. Figueroa Castro*, 102 D.P.R. 279, 289 (1974), en lo pertinente, que:

> Considerando que *a la fecha en que entraron en vigor* los Arts. 602 y 608 de la Ley de Sustancias Controladas, 24 L.P.R.A. secs. 2602 y 2608, *estaba pendiente esta causa por haber sido apelada la sentencia*, el apelante tiene derecho a acogerse a los beneficios del Art. 404 de dicha ley, 24 L.P.R.A. sec. 2404, que impone penalidades más benignas que la ley bajo la cual fue convicto. *Figueroa Méndez v. Tribunal Superior*, 101

---

([4]) El escolio núm. 102, en referencia al texto transcrito, reza como sigue: "La Casación italiana de 17 de mayo de 1904 reconoce que debe aplicarse la ley más benigna, aunque ésta se haya publicado estando en trámite el recurso de casación. De esto ya no se duda más." L. Jiménez de Asúa, *Tratado de Derecho Penal*, 3ra ed. rev., Buenos Aires, Ed. Losada, 1964, T. II, pág. 674.

D.P.R. 859 (1974). *Cf. Padilla Figueroa v. Tribunal Superior*, 101 D.P.R. 933 (1974). (Énfasis suplido.)

Años más tarde, al reiterar lo antes expresado, dijimos, en lo pertinente, en *Pueblo v. Díaz Fuentes*, 113 D.P.R. 290, 291 (1982), que:

> En *Pueblo v. Rosa Burgos*, 103 D.P.R. 478 (1975), y *Pueblo v. Figueroa Castro*, 102 D.P.R. 279 (1974), resolvimos que *de no ser firmes las sentencias* impuestas en convicciones por los delitos de posesión y transportación de narcóticos bajo las disposiciones de la ley de 1959, *los acusados tendrían derecho a que se les modifiquen las mismas y se les sentencie bajo las disposiciones más benignas de la Ley de Sustancias Controladas*. El Procurador General ha comparecido ante nosotros y señala, acompañando copia de la sentencia, que las aseveraciones del peticionario son correctas. *El peticionario fue, en consecuencia, indebidamente sentenciado bajo un ley ya inaplicable*. (Énfasis suplido.)[5]

No abrigamos duda alguna sobre el hecho de que *idéntico razonamiento* es aplicable a una situación de hechos como la que ocupa hoy nuestra atención. *Esto es, si el legislador "descriminaliza" una conducta, por la cual una persona ha sido enjuiciada y declarada culpable, dicha*

---

[5] Compárese con el caso *distinguible* de *Pueblo v. Moreno Morales I*, 132 D.P.R. 261 (1992), en el cual este Tribunal se vió impedido de aplicar las disposiciones del Art. 4 (33 L.P.R.A. sec. 3004) en beneficio del acusado. Así actuamos, sin embargo, estableciendo la distinción de que la ley allí en controversia especificaba que "sus disposiciones serán aplicables a personas a ser juzgadas por hechos delictivos que se *cometan a partir de la fecha de [la] vigencia* [de esta ley]". (Énfasis en el original.) *Pueblo v. Moreno Morales I*, ante, pág. 289.

Debe señalarse que el caso que cita el Procurador General, *Pueblo v. Rosso Vázquez*, 105 D.P.R. 905 (1977), en apoyo a su posición —a los efectos de que la "sentencia" a la cual alude el segundo párrafo del Art. 4 del Código Penal, ante, únicamente se refiere, conforme el Procurador, al "pronunciamiento de la sentencia por el tribunal sentenciador, esto es, el de primera instancia, y no en apelación"— *no sostiene dicha posición*.

Dicha decisión lo que sí resuelve es que el artículo 4 no podrá aplicarse a convictos cumpliendo condenas si la sentencia apelada se dictó antes de la *fecha de vigencia del Código Penal del 1974*. Esto lo impide la cláusula de reserva, contenida en los Arts. 281 y 282 del Código Penal, 33 L.P.R.A. secs. 4625–4626, el cual establece específicamente que las disposiciones del Artículo 4 "se aplicarán solamente con carácter prospectivo a partir de la fecha de la vigencia del Código". D. Nevares-Muñiz, *Código Penal de Puerto Rico: revisado y comentado*, Hato Rey, Ed. Inst. Desarrollo del Derecho, 1993, pág. 6.

*persona tendrá derecho a recibir los beneficios de esa acción legislativa siempre y cuando la sentencia que le fuera impuesta no sea "final y firme";* ello, repetimos, al amparo de las disposiciones del Art. 4 del vigente Código Penal de Puerto Rico, ante. Una interpretación contraria no sólo resulta ser impermisiblemente restrictiva, sino retrógrada.([6])

No podemos enfatizar lo suficiente el hecho de que la solución de esta controversia es de vital importancia para los apelantes Villafañe Fabián y Contreras Martínez. Ello así ya que, como es por todos conocido, el estar en "probatoria" puede tener consecuencias desastrosas para una persona. A manera de ejemplo, debe recordarse que la Ley de Sentencia Suspendida establece que *una* nueva convicción mientras se esté disfrutando de los beneficios de una sentencia suspendida, *aun cuando la misma sea por delito menos grave,* puede acarrear la revocación de la mencionada probatoria y, por ende, el ingreso de la persona a una institución penal con el propósito de cumplir la sentencia originalmente impuesta. Véase 34 L.P.R.A. sec. 1031.

---

([6]) Sorprende, por último, la posición asumida por el Juez Asociado Señor Hernández Denton, en la opinión de conformidad que emite, a los efectos de que los aquí apelantes no tienen derecho al beneficio provisto por la Asamblea Legislativa, al eliminar el carácter delictivo de la conducta en controversia, debido al hecho de que en las resoluciones y leyes que aprobó a esos efectos no se indicó específicamente que dicha acción se aplica a los apelantes. Olvida el distinguido Juez que la Asamblea Legislativa de este País al legislar, lo hace para el bienestar general de la sociedad y no para el beneficio exclusivo de determinadas personas.