En el Tribunal Supremo de Puerto Rico

| El Pueblo de Puerto Rico<br>    Peticionario<br><br>    V.<br><br>Ramón L. García Santiago<br><br>    Recurrido | Certiorari<br><br>98TSPR153 |

Número del Caso: CC-96-486

Abogados de la Parte Peticionaria: Hon. Caarlos Lugo Fiol
Procuradoar General

Lic. Eunice Amaro Garay
Procuradora  General Auxiliar

Abogados de la Parte Recurrida: Lic. Ana Esther Andrade Rivera
Sociedad Para Asistencia Legal

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior, Sala de San Juan

Juez del Tribunal del T.P.I.: Hon. Bárbara Sanfiorenzo Zaragoza

Tribunal de circuito de Apelaciones: Circuito Regional I San Juan

Juez Ponente: Hon. Negroni Cintrón

Fecha: 11/13/1998

Materia:

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

El Pueblo de Puerto Rico

    Peticionario

      v.                        CC-96-486       Certiorari

Ramón L. García Santiago

    Recurrido

## SENTENCIA

San Juan, Puerto Rico, a 13 de noviembre de 1998

I

    Ramón L. García Santiago fue acusado de infringir, en grado de tentativa, el Art. 18 de la Ley para la Protección de Propiedad Vehicular —Núm. 8 de 5 de agosto de 1987 (9 L.P.R.A. sec. 3217), y violar el Art. 2-A de la Ley de Armas —Núm. 17 de 19 de enero de 1951, según enmendada— (25 L.P.R.A. sec. 412-A).

    La acusación por tentativa leía:

> "El referido acusado, Ramón García Santiago, allá en o para el día 28 de agosto de 1995, en Santurce; Puerto Rico, que forma parte de la jurisdicción del Tribunal Superior de Puerto Rico, Sala de San Juan, ilegal; voluntaria, maliciosa,

a sabiendas y con intención criminal intentó apropiarse del vehículo Ford Van 1984, tablilla 272-263; propiedad de Nelson Carreras Mañón, consistente en que intentara forzar el cristal de la puerta del lado izquierdo, no logrando la acción pretendida por causas ajenas a su voluntad."

La de infracción a la Ley de Armas rezaba:

"El referido acusado, Ramón García Santiago, allá en o para el día 28 de agosto de 1995, en Santurce; Puerto Rico, que forma parte de la jurisdicción del Tribunal Superior de Puerto Rico, Sala de San Juan, ilegal; voluntaria, maliciosa, a sabiendas y con intención criminal poseía y conducía pistola de pellets, niquelada con cachas plásticas negras; armas de juguete, la cual por su configuración y características aparenta ser una que puede causar daño corporal. El arma en cuestión fue ocupada y se utilizó en la comisión de un delito grave de tentativa de apropiación de vehículo de motor."

Celebrado el juicio en sus méritos, el Tribunal de Primera Instancia (Hon. Barbara M. Sanfiorenzo Zaragoza) lo encontró culpable y condenó a cumplir, **consecutivamente**, un año y medio, más seis (6) meses respectivamente.

Conforme la Exposición Narrativa de la Prueba, ésta claramente estableció que el 28 de agosto de 1995, como a la 1:30 A.M. (madrugada), desde su apartamento en el primer piso –Condominio en la Ave. Magdalena, Condado–, Nelson Carreras Mañón vio a una persona montada en una bicicleta blanca y azul penetrar al área privada del estacionamiento cercado y techado. Carreras Mañón tenía allí estacionada su Ford Van, blanca, modelo 1984. Se armó de la pata de una silla rota y optó por bajar y seguirlo. Al llegar a la parte posterior del estacionamiento, **observó al acusado García Santiago, cuando con un pedazo de "wiper" forzaba el cristal pequeño frontal de su vehículo Ford Van. También notó, que el automóvil de su vecino del Apto. 2-A mostraba un pedazo de 'wiper' parado y roto**. Carreras Mañón le cuestionó a García Santiago su conducta y éste nada contestó. Carreras Mañón le indicó que estaba en un área privada y no podía permanecer allí.

Acto seguido, García Santiago sacó un arma 'cromada', tipo 45 y apuntó al pecho de Carreras Mañón. Éste se hizo a un lado y García

Santiago se marchó en su bicicleta. Más tarde, García Santiago fue detenido y la Policía le ocupó un arma tipo 45, que resultó ser de 'pellets'."

El Tribunal de Instancia no creyó el testimonio y excusas de García Santiago y lo encontró culpable.

En apelación, el Tribunal de Circuito de Apelaciones (Hons. Rossy García, Aponte Jiménez y Negroni Cintrón), revocó y ordenó su excarcelación.[1] Concluyó que la prueba no demostró su culpabilidad más allá de toda duda razonable. Razonó que no se probó inequívocamente que García Santiago intentara apoderarse del vehículo de Carreras Mañón, pues podía inferirse que su intención fue apropiarse de cualquier objeto dentro de éste. Sobre la Ley de Armas, sostuvo que la acusación no imputaba el delito por el cual fue declarado culpable.

II

A solicitud del Procurador General revisamos vía <u>certiorari</u>. En esencia, cuestiona la exoneración de "toda culpabilidad" y aduce que el foro apelativo intervino injustificadamente con la apreciación de la prueba de instancia.

Coincidimos. No procede la absolución total de García Santiago. Distinto a la tesis mayoritaria del Circuito, el Ministerio Fiscal demostró el valor de la pieza a ser hurtada. Tampoco hay controversia de que la oportuna aparición e intervención de Carreras Mañón, frustró la intención del acusado García Santiago. Fue el agente disuasivo que evitó la apropiación de alguna propiedad o pieza que formaba parte del auto o estuviera en su interior.

Ante esta realidad, concluimos que se probó la **intención inequívoca de García Santiago de apropiarse de, al menos, alguna pieza vehicular**. Bajo el Art. 19 de la Ley de Propiedad Vehicular en grado de tentativa, 9 L.P.R.A. sec. 3218, se estableció su culpabilidad del

---

[1] El Juez Rossy disintió en cuanto a la revocación del Art. 18 de la Ley de Propiedad Vehicular.

delito menor comprendido en el Art. 18 de Apropiación Ilegal de un Vehículo de Motor de la misma Ley. 9 L.P.R.A. sec. 3217. Alguna intención y valor económico debemos atribuirle al "wiper" que García Santiago sustrajo y rompió del automóvil del vecino del Sr. Carreras Mañón.

A la luz de lo expuesto, procede en ese extremo **modificar** la Sentencia mayoritaria del Circuito de Apelaciones y devolver el caso al Tribunal de Primera Instancia para la imposición de la pena correspondiente a un delito menos grave, por no haberse demostrado que excedió de $100.00.[2]

Lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Corrada del Río emitió Opinión Disidente. Los Jueces Asociados señores Hernández Denton y Fuster Berlingeri disienten sin opinión escrita.

Isabel Llompart Zeno
Secretaria del Tribunal Supremo

---

[2] Penas clásicas para delitos menos graves, a saber, reclusión no mayor de seis (6) meses **o** multa hasta $500.00, o ambas, discrecionalmente.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

      v.                                    CC-96-486          Certiorari

Ramón L. García Santiago

    Recurrido

Opinión Disidente emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO

San Juan, Puerto Rico, a 13 de noviembre de 1998.

En el presente caso el Procurador General de Puerto Rico recurre ante nos mediante recurso de certiorari solicitando que revisemos la sentencia de 6 de noviembre de 1996, archivada en autos copia de su notificación el 26 de noviembre de 1996, dictada por el Tribunal de Circuito de Apelaciones. Mediante dicha sentencia revocó la dictada por el Tribunal de Primera Instancia que había condenado al señor Ramón L. García Santiago a cumplir consecutivamente un año y medio (1 ½) de reclusión por infringir en grado de tentativa el Art. 18 de la Ley Núm. 8 de 5 de agosto de 1987, 9 L.P.R.A. sec. 3217, conocida como la Ley para la Protección de Propiedad Vehicular; y seis (6)

meses por la violación del Art. 2-A de la Ley Núm. 17 de 19 enero de 1951, según enmendada, 25 L.P.R.A. sec. 412-A, conocida como la Ley de Armas de Puerto Rico.

El tribunal apelativo fundamentó su determinación en que del análisis de la exposición narrativa de la prueba surgía que no se probó la culpabilidad del acusado más allá de toda duda razonable. Razonó, asimismo, que la prueba presentada no demostró inequívocamente que el recurrido intentara apoderarse del vehículo del señor Carreras –parte perjudicada– ya que podía inferirse que su intención era apropiarse de cualquier objeto dentro de éste. En cuanto a la acusación por la infracción al Art. 2-A de la Ley de Armas dispuso que no imputaba el delito por el cual el recurrido fue declarado culpable y sentenciado.

Por no estar conforme con la sentencia que hoy emite este Tribunal, modificando la del tribunal apelativo, disentimos.

I

El 28 de agosto de 1995 a eso de la 1:20 de la madrugada el señor Nelson Carreras observó desde su apartamento, ubicado en un primer piso, cuando el recurrido García Santiago entró con su bicicleta al área de estacionamiento del Condominio en que él reside, situado en la Avenida Magdalena Núm. 1357 en el Condado, donde el señor Carreras tenía estacionado su vehículo, una Van color blanco modelo 1984, tablilla 272-263. Según surge de los autos, las únicas personas con acceso autorizado a dicho estacionamiento –el cual tenía una verja de cemento a vuelta redonda– eran los residentes del Condominio y los que éstos a su vez autorizaran. El señor Carreras salió del lugar donde se encontraba y se dirigió hacia el estacionamiento para averiguar qué pretendía realizar el recurrido ya que éste no era residente del Condominio. Tomó consigo una pata de una silla rota. Una vez allí, el señor Carreras observó al recurrido forzar con un pedazo de limpiaparabrisas ("wiper") el cristal de su vehículo antes descrito. Asimismo, observó que el carro del vecino del apartamento 2A mostraba un pedazo de limpiaparabrisas parado y roto.

Al ser increpado por el señor Carreras en relación a lo que hacía allí, el recurrido García Santiago contestó que nada y le apuntó a aquel con un arma cromeada, que aparentaba ser una pistola calibre 45, la cual resultó ser de "pellets". Acto seguido, ante la amenaza, el señor Carreras se movió para dejarle el paso libre al recurrido. Este se montó en su bicicleta y salió del área de estacionamiento.

El perjudicado instruyó a su esposa para que se comunicara con la policía. Los agentes del orden público arrestaron al recurrido en un establecimiento comercial. Posteriormente, fue identificado por el señor Carreras como el individuo que había tratado de abrir su vehículo.

El Tribunal de Primera Instancia halló culpable al recurrido de los mencionados delitos. El Tribunal de Circuito de Apelaciones revocó.

Inconforme con la sentencia recurre oportunamente ante nos el Procurador General, en representación del Estado, y aduce como único error lo siguiente:

"Erró el Tribunal de Circuito de

> Apelaciones al revocar la sentencia dictada por
> el Tribunal de Primera Instancia exonerando de
> toda culpabilidad al recurrido."

El Procurador arguye que el foro apelativo intervino injustificadamente con la apreciación de la prueba que hiciera el foro de instancia.

Luego de varios incidentes procesales el 2 de abril de 1997 expedimos mandamiento de Certiorari dirigido al Tribunal de Circuito de Apelaciones.

## II

Es principio cardinal en nuestra jurisdicción que la apreciación de la prueba le corresponde al tribunal sentenciador y que los tribunales apelativos sólo intervendrán con una determinación a esos efectos cuando se aporte evidencia de error manifiesto, pasión, prejuicio o parcialidad. *Pueblo v. Maisonave Rodríguez*, Opinión de 28 de junio de 1991, 129 D.P.R. ____, 91 J.T.S. 67; *Pueblo v. Rivero Diodonet*, 121 D.P.R. 454 (1988). La apreciación que de la evidencia hace el tribunal sentenciador merece respeto y deferencia por ser éste quien en mejor posición está al contar con el beneficio de escuchar a los testigos y observar su comportamiento. *Pueblo v. Cabán Torres*, 117 D.P.R. 645 (1986); *Pueblo v. Ríos Alvarez*, 112 D.P.R. 92 (1982). En consecuencia las determinaciones que hace el tribunal de primera instancia no deben descartarse en forma arbitraria ni tampoco ser sustituidas por el criterio del tribunal apelativo, a menos que de la evidencia desfilada surja que no existe base suficiente que sustente tal determinación. *Pueblo v. Maisonave Rodríguez, supra.*

Asimismo, hemos requerido que para que pueda obtenerse una convicción válida en derecho que derrote la presunción de inocencia que asiste a toda persona acusada de delito, es indispensable que el Ministerio Público presente prueba respecto a cada uno de los elementos del delito. *Pueblo en interés de F.S.C.*, 128 D.P.R. 931,941 (1991); *Pueblo v. Cabán Torres*, 117 D.P.R. 645, 652 (1986).

Esa evidencia tiene que ser suficiente en derecho para establecer no sólo los elementos del delito sino la relación de éste con el acusado y tiene que probarse más allá de duda razonable, *Pueblo v. Ramos y Álvarez*, 122 D.P.R. 287 (1988); *Pueblo v. Bigio Pastrana*, 116 D.P.R. 748, 760-61 (1985), y "tiene que ser satisfactoria, es decir, prueba que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido." *Pueblo v. Rodríguez Román*, 128 D.P.R. 121, 131 (1991); *Pueblo v. Narváez Cruz*, 121 D.P.R. 429 (1988); *Pueblo v. Carrasquillo Carrasquillo*, 102 D.P.R. 545, 552 (1974). De aquí que la insatisfacción de la conciencia del juzgador con esa prueba es lo que provoca una duda razonable. *Pueblo v. Toro Rosas*, 89 D.P.R. 169, 175 (1963). En consecuencia, es esa duda y no otra la que requiere revocar una convicción.

Hemos dispuesto, además, que por ser la apreciación de la prueba desfilada en un juicio una cuestión mixta de hecho y de derecho, la determinación de culpabilidad de un acusado más allá de duda razonable es revisable como cuestión de derecho. *Pueblo v. Rivero, supra,* pág. 472, (1988); *Pueblo v. Cabán Torres*, *supra,* pág. 653.

Conforme a los principios anteriormente descritos, y luego de examinar el expediente en el caso de autos, incluyendo la exposición narrativa de la prueba estipulada, procedería, aunque por fundamentos distintos, confirmar la sentencia dictada por el Tribunal de Circuito de Apelaciones. Veamos.

III

El artículo 26 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 3121, define la tentativa de cometer un delito de la siguiente manera:

> "Existe tentativa cuando la persona realiza acciones o incurre en omisiones inequívocamente dirigidas a la ejecución de un delito, el cual no se consuma por circunstancias ajenas a su voluntad."

Se ha definido la tentativa como "realizar acciones u omisiones inequívocamente dirigidas a la comisión de un delito, el cual involuntariamente se frustra".[3] Asimismo, se señala que el concepto de la "inequivocalidad" contenido en nuestra actual definición de tentativa comprende "aquellos actos que sin lugar a dudas apuntan o denotan la comisión de un delito que no llegó hasta su estado de consumación final por circunstancias ajenas a la voluntad del sujeto activo."[4]

El artículo 18 de la Ley para la Protección de la Propiedad Vehicular, 9 L.P.R.A. sec. 3217, dispone:

> "Toda persona que ilegalmente se apropiare sin violencia ni intimidación de algún vehículo de motor, perteneciente a otra persona, será sancionada con pena de reclusión por un término fijo de cinco (5) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un máximo de doce (12) años, de mediar circunstancias atenuantes, podrá ser reducida hasta un mínimo de tres (3) años. El tribunal podrá imponer la pena de restitución en adición a la pena de reclusión establecida. Se entenderá que la apropiación es ilegal en cualquiera de las siguientes circunstancias, cuando la persona:
>
> (1) Se ha apropiado o apoderado del vehículo sin consenti-miento de su dueño.
> (2) ..."

Además, el artículo 19 de la Ley para la Protección de la Propiedad Vehicular, 9 L.P.R.A. sec. 3218, provee que:

> "Toda persona que ilegalmente se apropiare sin violencia ni intimidación de alguna pieza de un vehículo de motor, perteneciente a otra persona, será sancionada con pena de reclusión que no excederá de seis (6) meses o multa que no excederá de quinientos (500) dólares o ambas penas a discreción del tribunal, si el valor de la pieza del vehículo de motor no llegare a cien (100) dólares. Si llegare o excediere este valor, será sancionada con pena de reclusión por un término fijo de tres (3) años. De mediar circunstancias agravantes, la pena fija establecida podrá ser aumentada hasta un

---

[3] Dora Nevares Muñiz, Derecho Penal Puertorriqueño, Parte General, Instituto para el Desarrollo del Derecho, 1995, pág. 319.

[4] Dora Nevares Muñiz, Código Penal de Puerto Rico, Ed. 4ta., Instituto para el Desarrollo del Derecho, 1997, pág. 46.

máximo de cinco (5) años; de mediar
circunstancias atenuantes, podrá ser reducida
hasta un mínimo de dos (2) años. El tribunal
podrá imponer la pena de restitución en adición
a la pena de reclusión."

Es importante señalar que la Ley para la Protección de la Propiedad Vehicular, surge por el reconocimiento que hacen los miembros de la Asamblea Legislativa de que el automóvil es un elemento fundamental del quehacer cotidiano de los puertorriqueños. Asimismo, surge en respuesta a la alta incidencia de vehículos ilegalmente apropiados y del desasosiego que, por ende, sufren aquellos ciudadanos que por actuaciones delictivas de otros pierden tan necesario bien. En consecuencia el legislador aprobó esta medida no sólo "...en protección de aquellos ciudadanos con un comportamiento social de obediencia a la ley y como una medida para prevenir el crimen, sino como una medida para detener al criminal." Exposición de Motivos de la Ley Núm. 8 de 5 de agosto de 1987, Leyes de Puerto Rico, págs. 654-655.

En cuanto al alcance de esta ley e interpretando sus disposiciones, este Tribunal en *Pueblo en Interés del menor F.S.C.*, 128 D.P.R. 931, 939-941 (1991) reconoció que la misma pretende disuadir, a través del castigo, el que algunas personas ostenten la posesión de un vehículo de motor aún a sabiendas de que éste fue obtenido ilícitamente. Se determinó que la posesión es un elemento del delito por lo que se hace imprescindible que el Ministerio Público pruebe más allá de duda razonable que el imputado tenía la posesión, implicando con ello que tenía el dominio, control o la tenencia física sobre el objeto ilegal. Sin embargo, resulta pertinente aclarar que no sólo es necesario que se pruebe la posesión física, sino que el Ministerio Público podría probar, con evidencia directa o circunstancial, la posesión constructiva del vehículo de motor. Siendo, pues, la posesión constructiva aquella que surge cuando la persona aún sin tener la posesión inmediata o física del objeto, ejerce sobre éste algún tipo de control o

dominio.  Véanse, *Pueblo v. Cruz Rivera*, 100 D.P.R. 345, 349 (1971) y *Pueblo v. Cruz Rosado*, 97 D.P.R. 513, 515 (1969).

En el caso de autos, el delito de cuya tentativa fue acusado y sentenciado el señor García Santiago es el tipificado por el Artículo 18 de la Ley Para la Protección de la Propiedad Vehicular, delito que por definición implica posesión.  Por lo que coincidimos con el Tribunal de Circuito de Apelaciones cuando concluye que:

> "...para que se pueda encontrar culpable a una persona de haber intentado la apropiación de un vehículo de motor, el Pueblo tiene que demostrar que el apelante no pudo consumar los actos que iban inequívocamente dirigidos a apropiarse de un vehículo de motor, debido a circunstancias ajenas a su voluntad, ya fuese obteniendo la posesión del vehículo; empleando ardid, fraude, treta o engaño para adquirir la posesión, uso o control ilegal del vehículo; o vendiendo o en alguna forma enajenando, desmantelando o permitiendo
> que otra persona desmantele el vehículo sin consentimiento de su dueño."[5]

Ciertamente, del análisis de la exposición narrativa estipulada de la prueba no surge la intención inequívoca del apelante de apropiarse del vehículo de motor propiamente.  No se probó más allá de duda razonable que esa fuera su intención, o si su intención era apropiarse de alguna pieza o objeto del vehículo en cuyo caso la tentativa hubiese sido de violar el Art. 19 de la Ley para la Protección de la Propiedad Vehicular, *supra*, de lo cual no fue acusado.

El recurrido señala en su alegato que "el examen de la exposición narrativa de la prueba revela que nada hay en ella que demuestre o tan siquiera sugiera que el señor García tenía la inequívoca intención de apropiarse o de tomar posesión del vehículo del señor Carreras Mañón, que es el elemento esencial para que se configure la modalidad del delito contemplado en el artículo 18, *supra*, del que se acusó al señor García.  Y que el señor García muy claramente indicó que él tiene una condición de V.I.H. positivo y

---

[5]Sentencia del Tribunal de Circuito de Apelaciones, pág. 12.

por lo tanto necesitaba tomar mucha agua con los medicamentos prescritos, por lo que se vio en la necesidad de entrar al estacionamiento porque tenía deseos  de ir al baño[...]".[6]

Tanto la condición de V.I.H. positivo del recurrido como sus alegados efectos no explican su conducta. Es  decir,  no

---

[6]Alegato del recurrido señor Ramón L. García Santiago, pág. 9.

existe correlación alguna entre el móvil por el cual el recurrido entró al lugar de los hechos y el introducir parte de un limpiaparabrisas roto, perteneciente a un carro vecino, a través del panel y el cristal de la puerta del vehículo del señor Carreras.

Aunque cierto es que al momento de aparecer el dueño del vehículo, el recurrido no tenía la posesión física del auto, no es menos cierto que la aparición del dueño en la escena de los hechos frustró la intención del recurrido de intervenir indebidamente con un bien que no le pertenecía y para lo cual no estaba autorizado por el propietario. No podemos ser tan ingenuos como para refrendar la teoría del recurrido de que no estaba allí con otra intención que la de hacer una "necesidad biológica". Es inescapable la conclusión de que la aparición del señor Carreras fue el disuasivo que evitó que el recurrido continuara interviniendo indebidamente con una propiedad que no le pertenecía. La intervención del señor Carreras se produce en un momento en que el recurrido no había definido su propósito.

Aunque en nuestro ánimo pesan todos y cada uno de los hechos reseñados que surgen del caso ante nos, no es menos cierto que a la hora de adjudicar responsabilidad no podemos encontrar culpable al acusado.

El artículo 19 de la Ley para la Protección de la Propiedad Vehicular, *supra*, tipifica como delito el que una persona se apropie sin violencia ni intimidación de <u>alguna pieza de vehículo de motor</u>, perteneciente a otra. Sin embargo, este artículo requiere que para que pueda efectivamente penalizarse la comisión del delito, el juzgador tome como elemento clave el valor de la pieza a ser hurtada. A esos efectos, especifica que la persona podría ser sancionada con pena de reclusión que no excederá de seis (6) meses o multa que no excederá de quinientos (500) dólares o ambas penas a discreción del tribunal, si el valor de la pieza del vehículo de motor no llegare a cien (100) dólares. Si el valor excediera esta

cantidad sería la persona sancionada con una pena de reclusión fija por el término de tres (3) años.

No podemos concluir, tal como lo hace este Tribunal, que se probó más allá de toda duda razonable el delito de tentativa de violar el Art. 18 o el Art. 19 de la ley en cuestión. Al así hacerlo estaríamos incurriendo en un ejercicio altamente arriesgado, toda vez que tratándose de un estatuto penal nos está vedado especular en cuanto a la propiedad a ser sustraída. No sabemos si el recurrido se proponía hurtar el vehículo, o algún bien no relacionado con el vehículo –o específicamente y tal como requiere el Art. 19,– *supra*, una pieza del vehículo.

IV

Por otro lado, en cuanto a revocar la convicción por el Art. 2-A de la Ley de Armas, *supra*, entendemos que la determinación del Tribunal de Circuito de Apelaciones debe sostenerse, aunque por otros fundamentos. La sentencia que hoy emite este Tribunal soslaya este asunto.

En nuestro sistema republicano de gobierno, el poder judicial tiene la facultad de interpretar las leyes. En el descargo de esa función, hemos reconocido que por la forma en que se desenvuelve la conducta humana, el legislador nunca puede prever todas las posibilidades imaginables en el espectro de las situaciones cotidianas. *P.S.P. v. Com. Estatal de Elecciones*, 110 D.P.R. 400, 429 (1980). Es cuando surgen esas circunstancias no contempladas por el legislador cuando se hace imperiosa nuestra facultad de conformar la ley a su espíritu y propósitos. *Medina & Medina v. County Pride Foods, Ltd.*, 122 D.P.R. 172 (1988).

En síntesis, es principio cardinal de hermenéutica que en el proceso de interpretar el alcance de las leyes, los tribunales tenemos la ineludible responsabilidad de indagar y considerar los propósitos que tuvo en mente el legislador al aprobarlos y en esa dirección nuestro proceder debe garantizar el resultado que en

origen se quiso obtener. (citas omitidas) *Defendini v. E.L.A.,* Op. de 15 de julio de 1993, 134 D.P.R. ____ (1993), 93 J.T.S. 119; *Industria Cortinera v. Puerto Rico Telephone Company*, Op. de 4 de febrero de 1993, 133 D.P.R. ____ (1993), 93 J.T.S. 15; *Ramírez Lebrón v. Registrador*, Op. de 30 junio de 1992, 132 D.P.R. ___ (1992), 92 J.T.S. 113; *Vázquez v. Administración de Reglamentos y Permisos,* Op. de 13 junio de 1991, 129 D.P.R.___ (1991), 91 J.T.S. 53. Es decir, "[s]ólo hay una regla de interpretación que es absolutamente invariable y ésta es que debe descubrirse y hacerse cumplir la verdadera intención y deseo del poder legislativo." (citas omitidas) R. E. Bernier y J.A. Cuevas Segarra, *Aprobación e Interpretación de las Leyes en Puerto Rico*, San Juan, Publicaciones J.T.S., Inc., 2da ed., 1987, págs. 241-242.

Reiteradamente hemos opinado que los estatutos penales deben ser interpretados restrictivamente en cuanto a lo que desfavorece al acusado y liberalmente en cuanto a lo que le beneficia. *Mari Bras v. Alcaide*, 100 D.P.R. 506, 516 (1972); *Pueblo v. Padilla*, 20 D.P.R. 276 (1914). No obstante, esta regla de interpretación no requiere que se le dé a las palabras del estatuto en cuestión un significado menor que el que comúnmente tendrían dentro de nuestra realidad social o peor aún, que obviemos la verdadera intención del legislador al aprobarlo. *Pacheco v. Vargas, Alcaide, 120 D.P.R. 404, 410 (1988); Pueblo v. Hernández Colón, 118 D.P.R. 891, 903 (1987).*

Teniendo estos principios como norte procedamos a aplicarlos al caso ante nos.

El artículo 2-A de la Ley de Armas de Puerto Rico, *supra*, establece que:

> "No se podrá fabricar, importar, ofrecer, vender, alquilar, prestar, traspasar cualquier escopeta de aire, escopeta de muelle o cualquier otro instrumento o arma en la cual la fuerza propulsora sea un muelle o aire o cualquier instrumento o arma de los comúnmente conocidos como pistola de juguete dentro o en

la cual se usen cartuchos sin balas o puedan usarse cartuchos en blanco o cargados, o municiones, a menos que se posea licencia bajo las disposiciones de las secs. 411 et seq. de este título. Toda infracción a las disposiciones de esta sección constituirá delito menos grave. Esta disposición no será de aplicación a las armas de caza y de tiro al blanco. <u>Si las armas contempladas en esta sección son utilizadas en la comisión de un delito, se cometerá delito grave</u>." (Énfasis suplido).

De una lectura detallada de esta disposición de ley encontraremos que la misma proscribe dos (2) conductas distintas. De un lado, la fabricación, importación, ofrecimiento, venta, alquiler, préstamo o aún el traspaso de cualquier escopeta, instrumento o arma cuya fuerza propulsora sea el aire o un muelle, así como cualquier otro instrumento o arma de los conocidos como pistolas de juguete dentro o en la cual se usen cartuchos sin balas, cartuchos en blanco o cargados o municiones. En consecuencia, toda persona que incurra en alguna de las modalidades del ya descrito inciso, incurrirá en la comisión de un delito menos grave.

Por otro lado, aquella parte del artículo que lee "... si las armas contempladas en esta sección son utilizadas en la comisión de un delito, se cometerá delito grave" debe interpretarse, según su claro sentido, como que constituirá delito grave el utilizar las armas antes enumeradas en la comisión de un delito por cualquier persona y no solamente por los que las fabriquen, importen, ofrezcan, vendan, alquilen, presten o traspasen las mismas, como erróneamente sostuvo el Tribunal de Circuito de Apelaciones. No podemos perder de perspectiva que lo que busca la Ley de Armas, particularmente las enmiendas posteriores a su aprobación, es "cubrir aquellos aspectos que no están reglamentados en forma adecuada y establecer controles más eficaces que reduzcan al máximo la posibilidad del uso y tráfico ilegal de armas de fuego y municiones." Exposición de Motivos, Ley Núm. 35 de 30 de julio de 1991, Leyes de Puerto Rico, pág. 123. Sobre todo, si tomamos en

consideración "el empleo indebido de armas de fuego en la comisión de delitos[...]"[7], podemos concluir que la intención del legislador no es otra que desalentar el uso indebido y no autorizado de armas de fuego, con énfasis en aquellas situaciones donde éstas se utilicen en la comisión de algún delito. El uso de una pistola de municiones, o incluso de juguete por cualquier persona para cometer un delito, queda claramente tipificado como delito grave por el Artículo 2 A de la Ley de Armas, *supra*.

Aún cuando somos del criterio de que el legislador quiso tipificar como delitos dos (2) conductas distintas, no podemos sostener la convicción del recurrido por violación al Artículo 2-A de la Ley de Armas, *supra*.

En el caso de autos –por no probarse más allá de duda razonable la tentativa de violación a los Artículos 18 y 19 de la Ley para la Protección de la Propiedad Vehicular, *supra*, según discutido anteriormente, no podemos imputar violación al artículo 2-A, fundamentalmente porque no se probó que se utilizó el arma en la comisión de un delito.

Por los fundamentos antes expuestos disentimos. Confirmaríamos la sentencia dictada por el Tribunal de Circuito de Apelaciones y sostendríamos la absolución del señor García Santiago.

BALTASAR CORRADA DEL RÍO
Juez Asociado

---

[7]Según surge del Informe de la Comisión de lo Jurídico Penal sobre el P. del S. 453 a la Cámara de Representantes sobre las enmiendas a la Ley de Armas, pág. 8 , "a modo de dato ilustrativo, entre los años 1986 hasta los dos meses [sic] de 1989 se utilizaron armas de fuego en la comisión del delito de robo en más de un ochenta y un (81) porciento del total de estos delitos. Esto significa que de 46,058 robos cometidos en ese período, 37,478 fueron cometidos mediante el empleo de armas de fuego."